1 | LAW OFFICES OF DALE K. GALIPO
2 | Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Melanie T. Partow, Esq. (Bar No 254843)
3 | mpartow@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 | Woodland Hills, California 91367
Telephone:   (818) 347-3333
5 | Facsimile:   (818) 347-4118

6 | *Attorneys for Plaintiff*

7 | MICHAEL R.W. HOUSTON
CITY ATTORNEY
8 | MOSES W. JOHNSON, IV (SBN 118769)
Assistant City Attorney
9 | E-mail: mjohnson@anaheim.net
200 S. Anaheim Boulevard, Suite 356
10 | Anaheim, California 92805
Tel: (714) 765-5169 Fax: (714) 765-5123

11 |
Attorneys for Defendant DARON WYATT
12 |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL GONZALEZ, et al., | **Case No.: CV 10-4660 PA (SHx)** Consolidated: SA CV10-1608 PA (SHx) |
| Plaintiffs, | **JOINT MOTION IN LIMINE TO EXCLUDE AFTER-ACQUIRED INFORMATION; TO EXCLUDE** |
| v. | **SUBJECTIVE STATE OF MIND EVIDENCE; TO EXCLUDE SPECULATIVE EXPERT** |
| CITY OF ANAHEIM, et al., | **TESTIMONY; AND TO BIFURCATE LIABILITY AND** |
| Defendants. | **DAMAGES; TO EXCLUDE EVIDENCE OF WYATT BEING** |
| F.E.V. a minor by and through her guardian ad litem SAMANTHA VAZQUEZ; and ANTOINETTE SANCHEZ, | **NAMED AS A DEFENDANT IN OTHER CIVIL LAWSUITS, GORY/BLOODY PHOTOGRAPHS AND TESTIMONY FROM ROGER CLARK THAT DECEDENT HAD A RIGHT TO FLEE** [Declarations of Melanie T. Partow and Moses W. Johnson, IV *filed concurrently herewith*] |
| Plaintiffs, | |
| v. | Pretrial Conf.:     April 24, 2015 Hrg on MILs:      May 11, 2015 Trial:                 May 19, 2015 |
| CITY OF ANAHEIM, et al., | |
| Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO THIS HONORABLE COURT, PLEASE TAKE NOTICE** THAT on May 11, 2015 at 1:30 pm in the above-referenced court, the parties will and does hereby move as follows:

Plaintiff first moves to exclude specific items of after-acquired information (from trial altogether or from the liability phase of trial as further explained in Plaintiff's motion to bifurcate liability and compensatory damages) that were acquired by City of Anaheim police officers and investigators after the shooting, specifically:

(1) the decedent's criminal history and prior contacts with law enforcement;

(2) the decedent's alleged prior membership in a gang and photographs of his tattoos;

(3) the results of the toxicology tests for Anthony Gonzalez at autopsy;

(4) a knife found in a backpack in the road after the shooting;

Second, plaintiff moves to exclude testimony concerning Officer Wyatt's subjective state of mind during the incident as irrelevant to the *Graham* analysis and unduly prejudicial.

Third, Plaintiff moves to exclude speculative testimony by defendant's accident reconstruction expert Jon Landerville that Officer Wyatt would have been injured had the vehicle continued moving and that Officer Wyatt was at risk of imminent death or serious bodily injury.

Finally, Plaintiff moves to bifurcate liability and damages.  First, a non-bifurcated trial would severely prejudice plaintiff's ability to obtain a fair trial. Second, Fourth Amendment excessive force jurisprudence requires that the jury in this case determine reasonableness based only on the objective facts known to Officer Wyatt at the time he fired.

//

SACV10-4660 PA (SHx)

Defendant Daron Wyatt ("Defendant"), will and hereby does move the Court for an order excluding any evidence, testimony or argument concerning other civil lawsuits, in which Daron Wyatt was named as a defendant, and reference to prior employment with multiple law enforcement agencies early on in Daron Wyatt's career, Bloody/Gory Photographs and Testimony from Roger Clark that decedent had the right to flee.  Specifically, this motion will seek to exclude evidence of:

  1. The fact that Daron Wyatt has been a named defendant in other civil lawsuits including a recent case in which the jury returned a defense verdict; and

  2. The fact that Daron Wyatt worked for three different law enforcement agencies in addition to doing private investigation work between the years of 1986 and 1995; and

  3. Gory/Bloody Photographs of the decedent; and

  4. Testimony from Roger Clark that either officers' actions (prior to the use of deadly force) gave decedent the right to resist and/or a right to flee or that either officer used excessive force.

The defendant seeks exclusion of this evidence on the grounds that it lacks probative value, is substantially more prejudicial than probative, and constitutes nothing more than inadmissible character evidence.  FED. R. EVID. 401, 403, 404.

The parties move to exclude this evidence following the Local Rule 16-2 conference of counsel that took place over the course of numerous discussions between lead trial counsel between April 1, 2015 and April 13, 2015.  The parties were able to stipulate to the exclusion of some evidence but were unable to informally resolve all of their evidentiary disputes.

The parties base their motions on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declarations of Melanie T. Partow and Moses W. Johnson, IV in Support of the parties Motion in Limine and

1  Exhibits attached thereto, any argument raised at the hearing on this motion, and

2  all other pleadings and papers on file with this honorable court.

3  Respectfully submitted,

4  Dated:  April 17, 2015                         LAW OFFICES OF DALE K. GALIPO

5

6                                                         /s/ Melanie T. Partow

7                                                    _____
                                                       Dale K. Galipo
8                                                      Melanie T. Partow
                                                       Attorneys for Plaintiff
9

10  Dated: April 17, 2015                       MICHAEL R.W. HOUSTON, CITY ATTORNEY

11

12                                 By:  _____/s/ Moses W. Johnson, IV_____
                                                       Moses W. Johnson, IV
13                                                    Assistant City Attorney
                                                       Attorneys for Defendant
14                                                    DARON WYATT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE AFTER-ACQUIRED INFORMATION

I.   INTRODUCTION.................................................................1

II.  THE U.S. SUPREME COURT AND THIS CIRCUIT EXPRESSLY PROHIBIT USING INFORMATION UNKNOWN TO THE OFFICERS AT THE TIME OF THE SHOOTING (OR ACQUIRED AFTER THE FACT) TO DETERMINE THE REASONABLENESS OF A USE OF FORCE.......................................................4

     A.   THIS COURT SHOULD EXCLUDE ANTHONY GONZALES' CRIMINAL HISTORY.................................................. 6

          1.   Officer Wyatt had no Information that Anthony Gonzales had any Criminal History................................................ 6

          2.   Mr. Gonzales' Criminal Record is Irrelevant....................... 6

          3.   The Low, if any, Probative Value of Mr. Gonzales' Criminal History is Clearly Outweighed by the Risk of Undue Prejudice and should be Excluded under Rule 403................................7

          4.   Defendants have not Sought the Required Access to and Release of Mr. Gonzales' Juvenile File from the Juvenile Court in Compliance with Welfare and Institutions Code §827 and this Court Lacks the Authority to Publicize the Contents of his Juvenile File Absent Permission from the Juvenile Court..............   9

     B.   THIS COURT SHOULD EXCLUDE MR. DIAZ' ALLEGED GANG AFFILIATION AND HIS TATTOOS................................... 11

          1.   Prior to the Shooting, Officer Wyatt had no Information that Mr. Gonzales was Affiliated with any Gang, did not form the Impression that he had Encountered a Gang Member and he Never Saw any of Mr. Gonzales' Tattoos .....................   12

2.   Mr. Gonzales' Alleged Gang Affiliation and his Tattoos are Irrelevant; the Testimony of Sgt. Bryan Janocha Should be Excluded.................................................................... 12

3.   Any Probative Value Evidence of Mr. Gonzales' Alleged Gang Affiliation and his Tattoos is Outweighed by a Substantial Risk of Undue Prejudice to Plaintiff..................................... 14

C.   THE COURT SHOULD EXCLUDE REFERENCE TO THE TOXICOLOGY RESULTS ACQUIRED AT AUTOPSY...............16

A.   Drug Evidence is Irrelevant..........................................16

B.   Drug Evidence is Unduly Prejudicial............................. 17

D.   THE COURT SHOULD EXCLUDE EVIDENCE OF THE KNIFE FOUND BY INVESTIGATORS AFTER THE SHOOTING.................................................................. 20

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1(A) THROUGH (D) TO EXCLUDE AFTER-ACQUIRED EVIDENCE

I.   INTRODUCTION.................................................................   21

II.  ARGUMENT.......................................................................   22

A.   Evidence Of Facts Not Definitively Known To Officer Wyatt At The Time Of The Shooting Are Relevant And Admissible In The Analysis Of Whether Officer Wyatt's Use Of Force Was Objectively Reasonable..........................   22

B.   Evidence of Facts Not Definitely Known to Officer Wyatt At The Time Of The Shooting Is Relevant To Computation Of Damages.................................................   24

C.   Evidence At Issue In This Motion Is Relevant And Admissible...   25

D.   Gonzales' Criminal History (Portion 1(A) Of Plaintiff's Motion) ...   25

E.  Gonzales' Membership In A Gang And His Tattoos (Portion 1(B) of Plaintiff's Motion) ............................................. 27

F.  BFTH Gang Expert Bryan Janocha Should Be Allowed To Testify......................................................................... 29

G.  Results of Gonzales' Toxicology Tests (Portion 1(C) Of Plaintiff's Motion........................................................... 31

H.  The Folded Knife Found On The Driver's Side Floor (Portion 1(D) of Plaintiff's Motion) ................................... 34

III.  CONCLUSION................................................................. 35

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPORT OF PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE WYATT'S SUBJECTIVE STATE OF MIND

I.  ARGUMENT.................................................................. 35

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE WYATT'S SUBJECTIVE STATE OF MIND ....................................... 37

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE SPECULATIVE TESTIMONY BY DEFENDANT'S ACCIDENT RECONSTRUCTION EXPERT, JAMES LANDERVILLE

I.  ARGUMENT.................................................................. 39

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE SPECULATIVE TESTIMONY BY DEFENDANT'S ACCIDENT RECONSTRUCTION EXPERT, JON LANDERVILLE ...................................................... 40

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE NO. 4 TO BIFURCATE LIABILITY AND COMPENSATORY DAMAGES

SACV10-4660 PA (SHx)

I.      ARGUMENT..................................................................... 42

DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION IN LIMINE NO. 4 TO BIFURCATE LIABILITY AND
COMPENSATORY DAMAGES

I.      INTRODUCTION............................................................ 44

II.     UNDER THE NINTH CIRCUIT'S LEGAL STANDARD, BIFURCATION IS
        INAPPROPRIATE AND UNWARRANTED............................... 45

        A.      Complexity of the Issues .......................................... 45

        B.      Risk of Misunderstanding a Non-Bifurcated Trial ................. 47

        C.      Facilitation of Disposition of the Issues ......................... 47

        D.      Prejudice to the Parties........................................ 48

III.    CONCLUSION.................................................................. 48

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF
OFFICER WYATT BEING NAMED IN OTHER CIVIL LAWSUITS

I.      INTRODUCTION............................................................ 49

II.     EVIDENCE AT ISSUE...................................................... 50

III.    ARGUMENT

        A.      Any Evidence Concerning Other Civil Lawsuits and Prior Employment is
                Irrelevant in this Case............................................. 50

        B.      Evidence Relating to Other Civil Lawsuits and Prior Employment is
                Impermissible Character Evidence.................................. 52

        C.      Evidence of Other Alleged "Wrongs" is More Prejudicial
                than Probative.................................................... 56

SACV10-4660 PA (SHx)

IV.     CONCLUSION.................................................................   57

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO
EXCLUDE EVIDENCE OF OFFICER WYATT BEING NAMED IN OTHER CIVIL
LAWSUITS

I.      INTRODUCTION..........................................................   58

II.     GIVEN THAT THE DEFENSE SEEKS TO INTRODUCE CHARACTER
        AND PROPENSITY EVIDENCE CONCERNING THE DECEDENT,
        PLAINTIFF SHOULD BE ENTITLED TO INTRODUCE CHARACTER
        AND PROPENSITY EVIDENCE CONCERNING THE DEFENDANT...   59

III.    OFFICER WYATT'S EMPLOYMENT AND TRAINING HISTORY IS
        RELEVANT AND NON-PREJUDICIAL.................................   61

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF
GORY/BLOODY PHOTOS

I.      INTRODUCTION..........................................................   61

II.     ARGUMENT

        A.      Gory/Bloody Photographs....................................   62

III.    CONCLUSION..............................................................   63

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO
EXCLUDE EVIDENCE OF GORY/BLOODY PHOTOS

I.      ARGUMENT

        A.      Photos of the Decedent After He Was Shot are Necessary to Support
        Plaintiff's Claim for Survival Damages.........................................   63

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION IN LIMINE NO. 3 TO LIMIT THE TESTIMONY AT THE
TIME OF TRIAL OF PLAINTIFF'S EXPERT, ROGER CLARK

-ix-

I.    ARGUMENT.................................................................... 65

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 3 TO LIMIT THE TESTIMONY AT THE TIME OF TRIAL OF PLAINTIFF'S EXPERT, ROGER CLARK

I.    ARGUMENT

A.    The Fourth Amendment's Reasonableness Analysis Asks the Jury to Consider the Totality of the Circumstances and the Availability of Less Than Lethal Alternatives;  Roger Clark's Consideration of Officer Wyatt's Pre-Shooting Conduct in Opining as to the Reasonableness of the Shooting is Proper and Consistent with the Ninth Circuit's Ruling........................ 66

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE AFTER-ACQUIRED INFORMATION

## I.   INTRODUCTION

This case involves the September 25, 2009 shooting death of Mr. Adolph Anthony Sanchez Gonzales ("Anthony" or "Mr. Gonzales") by Anaheim City Police Officer Daron Wyatt. Anaheim City police officers Daron Wyatt and Matthew Ellis first observed Anthony Gonzales after midnight on September 25, 2009 driving a Mazda MPV van in the lane next to them, stopped at an intersection. The officers claim that when the light turned and both cars began making left turns, Mr. Gonzales' Mazda nearly collided with the officers' vehicle. However, the officers did not make any attempt to stop, question, or even cite Mr. Gonzales for a traffic violation. Instead, the officers proceeded to respond to a low priority call reporting a man sleeping in the center divider of the road.

The officers later returned to the intersection where they initially saw Mr. Gonzales and observed him standing outside the van, which was parked at a corner gas station next to a gas pump. It appeared to the officers that Mr. Gonzales might be pumping gas. They concede that Mr. Gonzales was committing no crime and he was not behaving suspiciously. The Mazda was not reported stolen. The officers learned that the Mazda van had been involved in a prior arrest concerning drugs but there was no information concerning any outstanding convictions, parole or probation notifications, or wants or warrants associated with the Mazda.

The officers had never seen this car before. The officers had never seen Mr. Gonzales before. The officers did not know who he was or anything about him. They had no information that he had any criminal history, was under the influence of drugs or alcohol, was armed, or was affiliated with any gang. Aside from the potential traffic violation that the officers initially observed and ignored, the

officers had no information that would differentiate Mr. Diaz from any other member of the public.

The officers followed Mr. Diaz when he exited the gas station. They admit he committed no traffic violations, but claim that he was "weaving within his own lane." The officers activated the overhead lights on their vehicle and Mr. Gonzales complied by pulling over.

The officers could see inside the vehicle and could see that there was no one inside the vehicle but Mr. Gonzales. The officers quickly approached either side of the vehicle and observed Mr. Gonzales make a quick motion from his hand to his mouth as if he was putting something inside of his mouth. The officers never saw anything in Mr. Gonzales' hands, and saw nothing inside the car that looked like a weapon. Mr. Gonzales never said anything.

In response to seeing Mr. Gonzales make a motion with his hand from his hand to his mouth, the officers engaged in the use of force against Mr. Gonzales, including the use of carotid restraints, blows to Mr. Gonzales with flashlights and punches to Mr. Gonzales' person. Officer Ellis admits that Mr. Gonzales never tried to kick, punch, bite or otherwise harm either of the officers. Mr. Gonzales also never threatened either of the officers.

Officer Wyatt reached into the passenger side of the car through the front passenger side window, opened the front passenger-side door and got inside. Shortly thereafter, the car began moving forward with Officer Wyatt inside. Although Officer Ellis' arms were holding Mr. Gonzales in a carotid restraint through the driver's side window, Ellis was unharmed when the car began moving forward. Wyatt claims that he tried slapping the gear shift into park as Mr. Gonzales began driving away. Wyatt also claims that Mr. Gonzales was parrying Wyatt's hands away.

Within six seconds of when the car began to move forward, Officer Wyatt

SACV10-4660 PA (SHx)

drew his gun, and without warning, shot Mr. Gonzales in the head at point blank range (from six inches away). Officer Wyatt then steered the Mazda MPV into a nearby white truck. After that impact, the car stopped on its own.

Mr. Gonzales was pulseless and not breathing according to officers Kelly Phillips and Leslie Vargas, who resuscitated him at the scene. Mr. Gonzales then received care by the fire department, headed by Fire Captain Thompson. He was transported to the ER, where he was intubated and where he received care for his traumatic brain injury. He died just short of his 22nd birthday, leaving behind plaintiff F.E.V. (Felisha), his unborn daughter.

This motion in limine is intended to exclude evidence that City of Anaheim investigators acquired after the fact and that was unknown to Officer Wyatt at the time of the shooting, specifically, Mr. Gonzales' criminal history, Mr. Gonzales' alleged membership in a gang and his tattoos; the results of the toxicology tests for Mr. Gonzales at autopsy indicating the presence of alcohol and methamphetamine; and information that investigators found a folding knife in a backpack in road after the shooting. This motion in limine also seeks to exclude evidence and testimony concerning Officer Wyatt's subjective state of mind. This motion in limine further seeks to exclude the speculative testimony of defendants' accident reconstruction expert James Landerville, that Officer Wyatt would have suffered serious injury or death had the car continued moving forward (and had he not shot Mr. Gonzales). Finally, this motion seeks to bifurcate liability from compensatory damages on the basis that information that defendants purport to be relevant to compensatory damages would prevent plaintiff from having a fair trial on his civil rights claims and because Fourth Amendment excessive force jurisprudence requires that the jury limit its determination of reasonableness to the objective facts known to Officer Wyatt at the time he shot and killed Mr. Gonzales.

## II. THE U.S. SUPREME COURT AND THIS CIRCUIT EXPRESSLY PROHIBIT USING INFORMATION UNKNOWN TO THE OFFICERS AT THE TIME OF THE SHOOTING (OR ACQUIRED AFTER THE FACT) TO DETERMINE THE REASONABLENESS OF A USE OF FORCE.

Since the United States Supreme Court first elucidated the Fourth Amendment reasonableness standard in police shooting-death cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (U.S.N.C. 1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985).

Adhering to the parameters of what the officer knew at the time of a shooting in a Fourth Amendment reasonableness analysis is of the utmost importance because it maintains an essential balance and protects *both* law enforcement officers and the public. *See Tennessee v. Garner*, 471 U.S. 1, 25-26 (1985) (the Fourth Amendment requires the "careful balancing of the important public interest in crime prevention and detection and the nature and quality of the intrusion upon legitimate interests of the individual."), citing *United States v. Place*, 462 U.S. 696, 703 (1983).

In *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011), the Ninth Circuit most recently reiterated that information *unknown* to an officer at the time of his use of force – or information *acquired after the incident* by investigators or during discovery – cannot be considered. In *Glenn*, officers used a beanbag gun to shoot a man with a knife who was threatening suicide. Unknown to the shooting officer at the time of the incident, a witness told a 911 operator that the suspect

1    "was threatening to kill everybody" and might "run at the cops with a knife." *Id.*

2    Rejecting the District Court's "suggestion that, …these statements provide

3    uncontroverted evidence demonstrat[ing] that the officers' safety concerns were

4    not at odds with information provided to law enforcement," the Ninth Circuit

5    reiterated, "[w]e cannot consider evidence of which the officers were unaware…"

6    *Glenn v. Washington Cnty.*, 673 F.3d 864, 873, n.8 (9th Cir. 2011) (emphasis

7    added), citing *Graham*, 490 U.S. at 396.

8         Accordingly, in the Ninth Circuit, juries are instructed that they "must judge

9    the reasonableness of a particular use of force from the perspective of a reasonable

10   officer on the scene" at the time of the use of force "and not with the 20/20 vision

11   of hindsight." *Id.*; Ninth Circuit Model jury Instruction 9.22; *Jackson v. City of

12   Bremerton,* 268 F.3d 646, 651 (9th Cir.2001). The Ninth Circuit Model Instruction

13   for excessive force claims further informs the jury, "the reasonableness of a seizure

14   must [] be assessed by carefully considering the objective facts and circumstances

15   that confronted the arresting officers." Ninth Circuit Model jury Instruction 9.22;

16   citing *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

17        In light of how the jury will be instructed and given the great weight of

18   Supreme Court and Ninth Circuit authority on this issue, permitting the jury to

19   learn about facts and circumstances that Officer Wyatt was not confronted with or

20   that were otherwise unknown to him at the time he made the decision to use deadly

21   force against Mr. Gonzales would be improper.  In addition, since this type of

22   evidence is not relevant to the jury's reasonableness determination, any probative

23   value would be substantially outweighed by the risk of unfair prejudice that the

24   jury would rest its decision on an improper basis and judge the shooting with 20/20

25   hindsight.  For these reasons and because the evidence is unduly prejudicial and

26   improper character evidence, evidence of the Mr. Gonzales' criminal history, drug

27   and alcohol use, tattoos, alleged gang affiliation and the folding knife discovered

28

by investigators in a backpack in the road after the shooting should be excluded as set forth in the following sections.

**A.   THIS COURT SHOULD EXCLUDE ANTHONY GONZALES' CRIMINAL HISTORY.**

**1.   Officer Wyatt had no Information that Anthony Gonzales had any Criminal History.**

Officer Wyatt had never seen Mr. Gonzales before.  He knew nothing about Mr. Gonzales and did not know anything about Mr. Gonzales' criminal history. Other than a traffic violation that he initially ignored, at the time of the shooting, Officer Wyatt had no information that any crime had taken place, did not see any crime taking place, had no information that anyone was armed and did not see any weapons on Mr. Gonzales.

**2.   Mr. Gonzales' Criminal Record is Irrelevant.**

Relevant evidence is only that "evidence having [a] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Evidence which is not relevant is not admissible. Fed R. Evid. 402.

As set forth above, this is not a case where Officer Wyatt responded to a call concerning an armed robbery, a man with a gun, a reported stabbing, a hostage situation, or a reported violent felony.  Officer Wyatt had no information that he had encountered someone with an extensive criminal history, who was known to carry weapons, or who was in a gang.  Rather, in this case, Officer Wyatt has already testified that when he shot Mr. Gonzales, he did not know who he was, had never seen Mr. Gonzales before, and did not know anything about Mr. Gonzales.  These are the circumstances of the shooting in this case.

Evidence of Mr. Gonzales' prior criminal history does not corroborate Officer Wyatt' state of mind at the time of the shooting, because Officer Wyatt didn't think that Mr. Gonzales was a known criminal, he hadn't seen Mr. Gonzales committing any criminal acts, and he hadn't seen Mr. Gonzales with any weapons.

### 3. The Low, if any, Probative Value of Mr. Gonzales' Criminal History is Clearly Outweighed by the Risk of Undue Prejudice and should be Excluded under Rule 403.

Rule 403 excludes evidence "if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Since Officer Wyatt had no knowledge of Mr. Gonzales' criminal history at the time of the incident, did not know who Mr. Gonzales was, and had never seen Mr. Gonzales prior to the incident, evidence of Mr. Gonzales' criminal history is irrelevant and unduly prejudicial. *See Stringer v. City of Pablo,* 2009 WL 5215396, at *7 (N.D.Cal. Dec.28, 2009) (evidence of plaintiff's criminal history was "overwhelmingly prejudicial" where officers lacked such knowledge when the incident occurred); *c.f. Ruvalcaba v.City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir.1995) (affirming admission of "limited" evidence of plaintiff's prior criminal history only because it was known to the officers at the time of the incident).

"[U]nfair prejudice means [an] undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Hankey,* 203 F.3d 1160, 1172 (9th Cir. 2000). "[E]vidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back,* 588 F.2d at 1287. "[E]ven a murderer has a right to be free from [civil rights violations] and the correlative right to present his claim[s] of [violations] to a jury that has not been

1  whipped into a frenzy of hatred." *Wilson v. City of Chicago*, 6 F.3d 1233, 1236
2  (7th Cir. 1993) ("Although a district judge has broad discretion in ruling on the
3  admissibility of evidence, especially when balancing intangibles as Rule 403
4  requires... the limits of permissible judgment were exceeded" in allowing the
5  introduction of "inflammatory evidence" including prior murder convictions
6  "having little or no relevance" to the plaintiff's claims).

7      "[W]hen the propensity of the evidence [is] to prove only criminal
8  disposition," the probative value of prior criminal acts is outweighed by unfair
9  prejudice. *United States v. Aims Back*, 588 F.2d 1283, 1285 (9th Cir. 1986). "The
10 federal rules bar the use of 'any circumstantial evidence that requires an inference
11 of a person's character to make it relevant...'" *Palmerin v. Riverside*, 794 F.2d at
12 1414, citing Fed R. Evid. 404.

13     Accordingly, it would also be improper to use Mr. Gonzales' criminal
14 history to infer that he was a violent person, likely to have been armed, likely to
15 have resisted, likely to have used force against Officer Wyatt during this incident,
16 or – as the defense intends to do – use this evidence to plant a seed in the jury's
17 mind that Mr. Gonzales' criminal history made it more likely that Officer Wyatt
18 would have been harmed had he not shot and killed Mr. Gonzales.  Moreover, the
19 idea that Mr. Diaz fled because of his criminal history would be pure speculation.
20 Inflammatory and misleading evidence and argument about such criminal history
21 is solely designed to unduly prejudice Plaintiff and the decedent and to confuse and
22 mislead the jury that such evidence can be used to justify the officers' use of force.

23     "Evidence of other crimes, wrongs, or acts is not admissible to
24 prove the character of a person in order to show that he acted in conformity
25 therewith." FRE 404(b).  Accordingly, any evidence of Mr. Gonzales' criminal
26 record should be excluded. *See Wilson v. City of Chicago*, 6 F.3d 1233 (7th
27 Cir. 1993) (in a civil rights case, it was improper for the district court to admit

28

-8-

1  plaintiff's prior criminal history - turning "trial of the defendants into a trial of the
2  plaintiff"); *United States v. Partyka*, 544 F.2d 345, 347 (8th Cir. 1976) (excluding
3  prior conviction for possession with intent to distribute where current incident
4  involved a different act because "the prejudicial effect of such testimony... might
5  very well outweigh the reasons advanced for its admissibility, such as to show
6  motive or intent.").

7       Furthermore, the decedent will not be testifying so that his credibility is not
8  in issue and, therefore, his felony conviction charges cannot be used to impeach
9  him.

10       Any jury, presented with this inflammatory and prejudicial evidence, will
11  not be able to divorce this evidence from its verdict on liability – even with a
12  limiting instruction.  Plaintiffs expect that Defendants will argue that Mr. Diaz'
13  criminal history is relevant to his damages.  This too, requires improper character
14  inferences that violate the Federal Rules of Evidence in order to make the evidence
15  relevant.

16      **4.**    **Defendants have not Sought the Required Access to and**
17          **Release of Mr. Gonzales' Juvenile File from the Juvenile**
18          **Court in Compliance with Welfare and Institutions Code**
19          **§827 and this Court Lacks the Authority to Publicize the**
20          **Contents of his Juvenile File Absent Permission from the**
21          **Juvenile Court.**

22       Defendant and his counsel are precluded from using any evidence from Mr.
23  Defendant Gonzales' juvenile criminal file in this case.  Defendant has never sought
24  the disclosure of Mr. Gonzales' criminal file from the juvenile court as required
25  pursuant to Welfare and Institutions Code §827.  *See* Declaration of Melanie T.
26  Partow ("Partow Decl.") in Support of Plaintiff's Motions in Limine at ¶ 3.
27
28

1   §827(a)(1)(P)(2) provides that "juvenile case files" that "pertain to a deceased child
2   who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be
3   released to the public pursuant to an order by the juvenile court after a petition has
4   been filed and interested parties have been afforded an opportunity to file an
5   objection." Both Mr. Moses Johnson (defense counsel in this case and City Attorney
6   for the City of Anaheim) and Mr. Bryan Janocha (formerly a police investigator and
7   now Sgt. for the Anaheim City Police Department who is expected to testify as
8   defendants' non-retained "gang expert") are expected to argue that §827 permits
9   them access to Mr. Gonzales' juvenile record without leave of the juvenile court.
10  However, §827(a)(4) *limits what the City Attorney and law enforcement can do with*
11  *information obtained* from juvenile records if they are, in fact, accessed in connection
12  with a juvenile proceeding.

13      Indeed, simply because Mr. Janocha participated in a juvenile criminal
14  investigation during which he encountered Mr. Gonzales as a juvenile, Mr. Janocha
15  was not thereafter granted *carte blanche* to publicize and use the confidential
16  information to which he was granted access however he pleased. §827(a)(4) provides,

17      "[a] juvenile case file, any portion thereof, and information relating to
18      the content of the juvenile case file, may not be disseminated by the
        receiving agencies to any persons or agencies, other than those
19      persons or agencies authorized to receive documents pursuant to this
        section. Further, a juvenile case file, any portion thereof, and
20      information relating to the content of the juvenile case file, may not be
21      made as an attachment to any other documents without the prior
        approval of the presiding judge of the juvenile court, unless it is used
22      in connection with and in the course of a criminal investigation or a
23      proceeding brought to declare a person a dependent child or ward of
        the juvenile court."
24

25      This federal civil rights action is neither a criminal investigation nor a
26  proceeding brought to declare a person a dependent child or ward of the juvenile
27  court. Partow Decl. at ¶ 3. Neither Mr. Gonzales' successor in interest nor his
28

parents have consented to the disclosure of his juvenile criminal records. Partow Decl. at ¶ 3. Plaintiff has not produced these records during discovery in this unrelated federal civil case, and has not identified them as documents on which they intend to rely to prove any of her claims in this case. The allegations in this federal civil rights case concerns events that took place over three years after Mr. Gonzales reached the age of majority. There is no commonality or overlap between Mr. Gonzales' juvenile criminal file and the facts and parties to Mr. Gonzales' daughter's unrelated federal civil case, which arises out of events that took place when Mr. Gonzales was nearly 22 years old. The defendants failed to obtain the approval of the presiding judge of the criminal court to use information from Mr. Gonzales' juvenile criminal file in this proceeding. Partow Decl. at ¶ 3.

Furthermore, "Fed.R.Evid. 609(d) provides that evidence of prior juvenile adjudications is generally inadmissible…, except under certain conditions in a criminal case. Congress specifically added the words 'in a criminal case' in limiting the circumstances under which a trial court may exercise its discretion in admitting evidence of a prior juvenile adjudication. The trial court has no discretion to admit such evidence in a civil proceeding." *Powell v. Levit,* 640 F.2d 239, 241(9th Cir. 1981), citing 3 Weinstein's Evidence, P 609(05), at 609-86 (1978).

Mr. Gonzales was born on October 29, 1987. He reached 18 years of age on October 29, 2005. Therefore, all information concerning Mr. Gonzales' criminal activity, including his alleged gang activity prior to his 18th birthday, must be excluded from the trial in this case. This includes item Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, and the 2004 allegation included in item No. 19 of Mr. Janocha's expert declaration, all of which concern contacts with Mr. Gonzales when he was a minor. Partow Decl. at ¶ 4; Exhibit A to Partow Decl.

**B.   THIS COURT SHOULD EXCLUDE MR. GONZALES' ALLEGED GANG AFFILIATION AND HIS TATTOOS.**

SACV10-4660 PA (SHx)

Defendant has designated a non-retained gang expert, Mr. Bryan Janocha, who has authored a declaration concerning Mr. Gonzales' gang affiliation when he was a minor.  Partow Decl. at ¶ 4; Exhibit A to Partow Decl.  In addition to Mr. Janocha's testimony, Plaintiffs anticipate that Defendants also intend to offer photographs and testimony concerning Mr. Gonzales' alleged gang affiliation and his tattoos.  While the defendants vehemently object to plaintiffs admitting photographs of Mr. Gonzales in the hospital, with a bandaged head, and suffering from his injuries, defendants will seek to admit prejudicial photos of tattoos on Mr. Gonzales' fingers that say "sick ones", a tattoo behind Mr. Gonzales' ear, "BFTH", which defendants will argue stands for "Boys From The Hood", and a tattoo on Mr. Gonzales' leg which is faded and undecipherable, but which defendants will also argue is gang-related.

**1.      Prior to the Shooting, Officer Wyatt had no Information that Mr. Gonzales was Affiliated with any Gang, did not form the Impression that he had Encountered a Gang Member and he Never Saw any of Mr. Gonzales' Tattoos.**

As set forth above, Officer Wyatt did not know Mr. Gonzales, did not recognize Mr. Gonzales, and knew nothing about him.  There no evidence in the record that Officer Wyatt ever saw any of Mr. Gonzales' tattoos prior to the shooting, or that he could make out what they were.  Officer Wyatt never testifies that he feared for his life or that he fired because he believed he had encountered a gang member.

**2.      Mr. Gonzales' Alleged Gang Affiliation and his Tattoos are Irrelevant; the Testimony of Sgt. Bryan Janocha Should be Excluded.**

As set forth above, evidence of Mr. Gonzales' tattoos and alleged gang affiliation are irrelevant unless they were known to Officer Wyatt at the time of the

-12-

1   incident.  Since Officer Wyatt had never seen Mr. Gonzales before and did not

2   know anything about him, including whether he was in a gang or if he had tattoos,

3   this evidence is irrelevant and improper hindsight evidence. Evidence is irrelevant

4   and inadmissible where it is meant merely to prejudice a decedent or prove his

5   guilt by association with unsavory characters. *United States v. Roark*, 924 F.2d

6   1426, 1434 (8th Cir.1991) (finding error where the district court allowed testimony

7   regarding gang's "institutional criminality").

8        Moreover, evidence of Mr. Gonzales' alleged gang affiliation is not relevant

9   to support any claim that he was prone to violence or likely to assault a police

10  officer.  *See, e.g., Lee v. Anderson*, 616 F.3d 803, 810 (8th Cir. 2010) (finding the

11  relevance of gang affiliation evidence "attenuated, and evidence of Fong Lee's

12  gang membership was, at best, marginally probative of his motive in fleeing from

13  the officers."); *U.S. v. Street*, 548 F.3d 618, 631-32 (8th Cir. 2008) (finding

14  reversible error where witnesses was allowed to offer testimony concerning the

15  "violent tendencies and criminal dispositions of gangs in general and of the Kansas

16  City El Forasteros in particular…"); *Lopez v. Aitken*, 2011 WL 672798 at *2, (S.D.

17  Cal. Feb. 28, 2011) (excluding evidence of the decedent's alleged gang affiliation

18  because the evidence was "marginal[ly] relevant, at best" to defense claim that the

19  decedent violently resisted arrest).

20       However, this is precisely how defendants intend to use this evidence.

21  Partow Decl. at ¶ 4; Exhibit A to Partow Decl.  Paragraphs 22 and 23 of the

22  declaration by Mr. Janocha, defendants' non-retained gang expert, state that he had

23  contacts with Mr. Gonzales in which he was angry and uncooperative and that Mr.

24  Gonzales was hostile toward law enforcement.  These opinions are vague as to

25  time and likely implicate Mr. Gonzales' juvenile criminal record, which is

26  inadmissible as set forth above.  To make these opinions relevant, they also require

27  the inference that on September 25, 2009, Mr. Gonzales would have acted in

28

conformity with his conduct as a minor years and earlier with Mr. Janocha.  These opinions also constitute impermissible character evidence.

Given that FRE 609(d) and defendants' failure to comply with Welfare and Institutions Code §827 render opinion Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17,  and the 2004 allegation included in item No. 19 of Mr. Janocha's expert declaration inadmissible, there is very little left on which Mr. Janocha may base his opinion that Mr. Gonzales was a gang member.  Partow Decl. at ¶ 4; Exhibit A to Partow Decl.  Mr. Janocha will testify that another officer told him that Mr. Gonzales was seen with a gang member and that he affirmed his gang membership while in custody in 2006 – which is too far remote from this incident and inadmissible hearsay.  And, Mr. Janocha will testify that Mr. Gonzales was arrested for wearing a Dallas Cowboys baseball hat.

Evidence of gang affiliation is also irrelevant to damages.  *See Lopez*, 2011 WL 672798, at *2.   It is far too speculative to state that Mr. Gonzales' conduct as a teenager would determine the type of person and father he would be for the rest of his life (or the rest of his daughter's life).  Given the speculative nature of this evidence, it has a very low probative value, which is far outweighed by the danger of undue prejudice.

### 3.    Any Probative Value Evidence of Mr. Gonzales' Alleged Gang Affiliation and his Tattoos is Outweighed by a Substantial Risk of Undue Prejudice to Plaintiff.

As set forth above, there is little or no probative value to evidence regarding Mr. Gonzales' tattoos or alleged gang affiliation. The probative value is especially minimal because Officer Wyatt knew nothing about the decedent and did not shoot Mr. Gonzales because he thought he was in a gang.

There is a known "substantial risk of unfair prejudice attached to gang affiliation evidence," *U.S. v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009), as

1   compared to its low probative value, and courts are reluctant to admit such
2   evidence.  The California Supreme Court has also indicated its disdain for gang
3   evidence in the absence of a gang enhancement allegation.  *Cf. People v.*
4   *Hernandez*, 44 Cal. 4th 1040, 1049 (2004) ("In [criminal] cases not involving the
5   gang enhancement, we have held that evidence of gang membership is potentially
6   prejudicial and should not be admitted if its probative value is minimal.").  There is
7   a real danger that the jury will improperly infer that the decedent had a criminal
8   and violent disposition based on evidence that was unknown to Officer Wyatt at
9   the time of the shooting. *See e.g.,* Exhibit D to Partow Decl. (photos).

10        Mr. Gonzales' tattoos are also unduly prejudicial. *Id.; see Walker v. City of*
11  *Orem*, 2007 WL 2955990 at *1 (D. Utah Oct. 5, 2007) ("where the tattoo is not
12  relevant to identification . . . any probative value could only be substantially
13  outweighed by the danger of unfair prejudice"); *Lawrence Estate v. City of El*
14  *Cajon*, 2006 WL 6111845, at *1 (S.D. Cal. May 5, 2006) (excluding any evidence
15  or reference to Decedent's "iron cross tattoo" or other facts suggesting
16  membership, involvement, or association with the Ku Klux Klan); *United States v.*
17  *Newsom*, 452 F.3d 593, 603-04 (6th Cir. 2006) (concluding that the "tattoo
18  evidence was unfairly prejudicial because it suggested to the jury that [the
19  defendant] had a hostile, criminal disposition"); *Finley v. Lindsay*, 1999 WL
20  608706, at *1 (N.D. Ill. Aug. 5, 1999) (excluding in section 1983 case evidence of
21  tattoos that indicated prior gang membership "[g]iven the highly prejudicial nature
22  of gang affiliation evidence and the tenuous, unsupported basis for Officers'
23  argument that such evidence is relevant to this case at all").

24        Accordingly, Plaintiffs respectfully request that the Court exclude evidence
25  and argument regarding Mr. Gonzales' tattoos and alleged gang affiliations,
26  including the testimony of defendants' gang expert Mr. Janocha, under Rule 403.

27

28

## C.   THE COURT SHOULD EXCLUDE REFERENCE TO THE TOXICOLOGY RESULTS ACQUIRED AT AUTOPSY.

Defendants intend to introduce information contained in the coroner's toxicology report completed after the incident, which indicates that there may have been methamphetamine and alcohol in the decedent's system at the time of the shooting. Since this information in no way guided or informed Officer Wyatt's decision to use force against Mr. Gonzales, it is irrelevant to the *Graham* analysis and should be excluded.

Moreover, defendants have designated no expert or toxicologist to offer any foundation for this evidence and intend to rely solely on speculation as to if and how the amount of methamphetamine documented in the test results would have caused Mr. Gonzales to behave during the incident.

Indeed, it is unknown when Mr. Gonzales ingested the alcohol or methamphetamine found in his blood at autopsy. The inference that Mr. Gonzales would have been violent or specifically attempted to harm Officer Wyatt during the incident because of the amphetamine or alcohol later determined to be in his blood and urine is a far reach that the defendants cannot make.

Plaintiffs also anticipate that the defendants may attempt to introduce improper character evidence related to Mr. Gonzales, including the allegation that his drug use near to the date of the incident is an indication that he was a habitual drug user or that he would have used drugs in the future.  Since this evidence is nothing more than pure speculation and would also be improper character evidence, it should be excluded pursuant to Rule 404 in addition to Rules 401, 402, and 403 of the Federal Rules Evidence.

### 1.   Drug Evidence is Irrelevant.

Drug evidence is irrelevant to whether it was objectively reasonable for defendant Wyatt to shoot Mr. Gonzales.  Defendant Wyatt does not claim to have

1  shot decedent because he was under the influence of drugs (which of course Wyatt
2  did not know at the time). It is undisputed that during the incident that Wyatt had
3  no information one way or the other as to whether Mr. Gonzales' used drugs, nor
4  could he have known the results of the toxicology tests showing that decedent had
5  drugs in his system.

6  To the extent Defendants may argue that the drug evidence may bear on
7  decedent's state of mind, his subjective state of mind is not at issue—rather, the
8  issue is whether the shooting was objectively reasonable under the circumstances
9  that Wyatt confronted. *Graham*, 490 U.S. at 397.

10  Defendants will also argue that Wyatt observed Mr. Gonzales make a
11  motion from his hand to his mouth as if Gonzales was trying to swallow something
12  in an effort to destroy evidence. This fact is undisputed, and no evidence need be
13  introduced so as to support an uncontroverted claim.

14  Decedent's alleged drug use also is not relevant to any damages issues in
15  this case. *Mason v. City of Chicago*, 641 F.Supp.2d 726, 730 (N.D. Ill. 2009) (in
16  Section 1983 action, "any evidence regarding alleged drug use is not probative to
17  the issue of damages, as such evidence does not touch on the value of [plaintiff's]
18  life") (internal quotations omitted). It would be pure speculation that a person's
19  alleged use or possession of drugs on isolated occasions would make it less likely
20  that she would be able to provide the same love and comfort in the future as a
21  person who did not.

22  Further, the evidence cannot be used to show decedent's character or that he
23  acted or will act in conformity therewith. *Palmerin v. Riverside*, 794 F.2d 1409,
24  1414 (9th Cir. 1985) ("The federal rules bar the use of any circumstantial evidence
25  that requires an inference of a person's character to make it relevant . . . .") . .

26  **2.    Drug Evidence is Unduly Prejudicial.**

27
28

-17-

1     Alternatively, the evidence of the toxicology report and any evidence of

2  drugs found after the incident is unduly prejudicial and misleading and should be

3  excluded under Rule 403.  Rule 403 excludes relevant evidence "if its probative

4  value is substantially outweighed by the danger of the unfair prejudice, confusion

5  of the issues, or misleading the jury, or by considerations of undue delay, waste of

6  time, or needless presentation of cumulative evidence."  "Unfair prejudice" means

7  "undue tendency to suggest decision on an improper basis, commonly, though not

8  necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th

9  Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991)

10  (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger

11  or punitive impulses).

12     Evidence of drug use can only serve to unjustly inflame a jury's passions

13  and prejudices against a party—here, decedent and plaintiff. *See Gregory v.*

14  *Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (granting a motion in

15  limine in an excessive force case to exclude drug paraphernalia the officers

16  discovered after the alleged excessive force occurred, because it was irrelevant and

17  unduly prejudicial under Rule 403); *id.* at *1 ("In today's climate, any evidence as

18  to a litigant's use of drugs has an obvious potential for being extraordinarily

19  prejudicial—for creating the prospect of deflecting the factfinders' attention from

20  the matters that are really at issue in the case to everyone's universally-shared

21  concerns as to the problems that drug usage is creating for our society."); *Kunz v.*

22  *DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008) (affirming district court's ruling

23  that barred "use of the word 'heroin,' because at the time of the arrest, the officers

24  did not know the nature of the drug or Kunz's usage and because mention of heroin

25  would be more prejudicial than helpful"); *Jackson v. City of Gahanna*, 2011 WL

26  587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of the illegal items

27  seized from the Plaintiff on February 25 would undermine the protections of the

28

-18-

1    Fourth Amendment by permitting the jury to infer that the Plaintiff's culpability or
2    status as a presumed drug dealer justify the Defendant's use of force against
3    him."); *Wisler*, 2008 WL 2954179, at *5 (excluding evidence of marijuana use on
4    grounds it was unduly prejudicial because not known by Defendants); *Wiersta v.*
5    *Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986) ("Convictions for possession of a
6    syringe and hypodermic needle and possession of heroin . . . are unquestionably
7    highly prejudicial."); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir.
8    1995) ("Evidence of a conviction for drug possession alone . . . can be highly
9    prejudicial and arouse jury sentiment against a party-witness."); *cf. Rascon v.*
10   *Hardiman*, 803 F.2d 269, 278 (7th Cir. 1986) (affirming exclusion of excessive
11   force decedent's mental health history, even though officers knew about his past
12   suicide attempt and mental illness history and argued it justified their actions in
13   subduing him, because of danger jury would conclude subduing was reasonable
14   based on status rather than conduct at the time); *Mason*, 631 F. Supp. 2d at 1060-
15   61 ("The question of whether Plaintiff smoked a marijuana cigarette three hours
16   before the incident is no more probative than whether the officers drank coffee
17   before the incident.  The introduction of expert testimony or testimony concerning
18   facts unrelated to the physical encounter would merely divert the jury from the
19   relevant inquiry . . . .  Marijuana plays no part in this inquiry and the introduction
20   of such evidence serves no purpose other than to make a general character attack
21   on Plaintiff.").  The inflammatory drug evidence is therefore likely to mislead or
22   confuse the jury into reaching a verdict that reflects its consideration of decedent's
23   drug use as a reason justifying the use of force or limiting plaintiffs' damages on
24   an improper basis.
25          Admission of such evidence also poses a substantial risk of leading to
26   "litigation of collateral issues, thereby creating a side issue which might distract
27   the jury from the main issues."  *Blancha v. Raymark Industries*, 972 F.2d 507, 516
28

1  (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*);

2  *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007).  The central factual dispute in this

3  case is whether decedent posed an imminent threat of death or serious bodily injury

4  to Wyatt when he was shot.  Refuting the inferences that defendants may attempt

5  to raise regarding decedent's drug use will necessitate a mini-trial on collateral

6  issues that have nothing to do with the central factual dispute, which will unduly

7  consume this Court's and the jury's time, as well as the calling of several

8  potentially unnecessary witnesses.  Accordingly, Plaintiff respectfully requests that

9  the Court alternatively exclude evidence and argument regarding drugs under Rule

10  403.

11      **D.    THE COURT SHOULD EXCLUDE EVIDENCE OF A**
             **FOLDING KNIFE FOUND BY INVESTIGATORS AFTER THE**
12           **SHOOTING.**

13      Included among the investigation documents produced by defendants, are

14  photographs of a small blue folding knife.  In these photographs, the knife, along

15  with other items, are neatly arranged on a brown piece of paper entitled, "driver

16  area".  There are many photographs of the interior of the vehicle at the scene,

17  including photographs of items that were found inside the vehicle at the scene.  If

18  the small blue folding knife was found inside the vehicle as the photographs imply,

19  there are no photographs of the knife were it was found inside the vehicle, whether

20  it was opened or closed, whether it was inside of another object, including any of

21  the opened zippered containers or the backpack that also photographed and

22  documented as items later recovered from the vehicle.

23      Defendants will argue that this knife corroborates Officer Wyatt's claim that

24  Mr. Gonzales was reaching between the driver's seat and the driver's side door

25  before he fired.  However, first, Officer Wyatt's claim that Mr. Gonzales was

26  reaching is undisputed because Officer Wyatt shot and killed the only other

27

28

witness to the event, therefore no evidence is required to corroborate this claim. Second, there is no evidence that the knife was located in the area where Officer Wyatt claims that Mr. Gonzales was reaching. Third, Officer Wyatt never claims that he saw a weapon or anything that looked like a weapon inside the vehicle at any time. In fact Wyatt specifically testified that he never saw a gun, a knife, or anything that looked like a knife. Therefore, that a knife was recovered from somewhere inside the vehicle by investigators after the shooting does not corroborate any of the objective facts known to officer Wyatt at the time he fired.

### DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1(A) THROUGH (D) TO EXCLUDE AFTER-ACQUIRED EVIDENCE

## I.   INTRODUCTION

This action arises out of an officer involved shooting that occurred on September 25, 2009. Plaintiff's claim is for alleged violation of the 4th Amendment under Section 1983 for the use of deadly force.

In part A of the first Motion in Limine, Plaintiff seeks exclusion of decedent Anthony Sanchez Gonzales' ("Gonzales") criminal history. Plaintiff argues that the evidence is not relevant because Officer Wyatt ("Wyatt") was unaware of these facts at the time of the shooting. As discussed below, this evidence is relevant to the determination of whether Wyatt's use of deadly force was objectively reasonable and is also relevant to the damages analysis.

Plaintiff seeks an order to exclude information acquired by the Defendant after the incident which resulted in the death of Gonzales on the ground that such information is irrelevant to whether Wyatt used excessive force in violation of Gonzales constitutional rights citing the general principles in Graham v. Connor (1989) 490 US 386, 396, and Glenn v. Washington (9th Cir. 2011) 673 F3d 864, 873. There are other grounds for the admission of certain items which Plaintiff

-21-

1   seeks to exclude.  Defendant considers each of Plaintiff's objections in order, Parts

2   A-D.

3   **II.      ARGUMENT**

4          **A.      Evidence Of Facts Not Definitively Known To Officer Wyatt At**

5                  **The Time Of The Shooting Are Relevant And Admissible In The**

6                  **Analysis Of Whether Officer Wyatt's Use Of Force Was**

7                  **Objectively Reasonable.**

8          In the first Motion in Limine, Plaintiff argues that the jury should only be

9   allowed to hear evidence concerning decedent that was definitively known to

10  Wyatt at the time of the shooting.  The Plaintiff relies heavily on the Supreme

11  Court's language from Graham v. Connor (1989) 490 US 386 that "the

12  reasonableness of use of force must be judged "from the perspective of a

13  reasonable officer on the scene . . . and not with the 20/20 vision of hindsight." Id.

14  at 396.  The Plaintiff argues that any facts not definitively known to Wyatt at the

15  time of the shooting are irrelevant "to the jury's reasonableness determination."

16  Pls' Motion, 5:22.

17         The Ninth Circuit in Boyd v. City and County of San Francisco (9th Cir.

18  2009) 576 F3d 938, stated:  "[i]n a case such as this, where what the officer

19  perceived just prior to the use of force is in dispute, evidence that may support one

20  version of events over another is relevant and admissible." Id. at 944, *citing*

21  Graham v. Connor, 490 U.S. 386, 399, n. 12 (1989) (indicating that a fact finder

22  may consider outside evidence "in assessing the credibility of an officer's account

23  of the circumstances that prompted the use of force"); Billington v. Smith (9th Cir.

24  2002) 292 F3d 1177, 1180-1185 (noting witness reports and the decedent's blood

25  alcohol content in analyzing reasonableness in an excessive force case); Luchtel v.

26  Hagemann (9th Cir. 2010) 623 F3d 975, 980 (citing hospital medical report

27  showing plaintiff was under the influence of crack cocaine in considering whether

28

                                      -22-

1    police officers used a reasonable force while arresting her).

2        In Boyd, the survivors of a man fatally shot by police brought a wrongful

3    death/excessive force action under 42 USC §1983, claiming that the use of deadly

4    force was unreasonable.  After the jury returned a defense verdict, the plaintiffs

5    appealed.  On appeal, the plaintiffs' primary argument was that the trial court erred

6    in allowing the jury to hear evidence not known to the officer at the time of the

7    shooting.  This evidence included, among other things:  (1) testimony concerning a

8    prior high-speed chase in which the decedent had been involved; (2) testimony

9    concerning the decedent's criminal history, including the kidnapping attempts and

10   the likely term of incarceration he would have faced had he survived; (3) testimony

11   concerning one of the decedent's prior arrests; (4) evidence that the decedent had

12   drugs in his system at the time he was shot; (5) evidence of the rap music lyrics

13   and newspaper clipping found in the decedent's car after the shooting.  Boyd,

14   supra, 576 F3d at 943.

15       Like what the plaintiff argues here, the survivors in Boyd argued that the

16   district court erred in admitting this evidence because the shooting officer "did not

17   know of its existence prior to shooting [the decedent], and the only issue in front of

18   the jury was whether [the officer's] actions were reasonable based on his

19   perspective at the time."  Id. at 943-944.  The Ninth Circuit rejected the survivors'

20   argument, finding that "[u]nder the relevancy analysis prescribed by the Federal

21   Rules, all of the challenged evidence was properly admitted, since it had a

22   tendency to make a fact of consequence more or less probable."

23       Here, Plaintiff has repeatedly called into question Officer Wyatt's account of

24   the events.  Plaintiff would also like to suggest that Gonzales' behavior was

25   entirely innocuous and that Gonzales did not exhibit any conduct that could be

26   considered threatening.  Plaintiff also argues that because Wyatt did not

27   sufficiently communicate to Gonzales prior to using deadly force, there was no

28

1  way for Gonzales to known what was happening or what was expected of him.

2  In the face of these arguments, Defendant must be given the opportunity to
3  respond.  Defendant should be entitled to proffer an alternative argument or
4  explanation for Gonzales' physical movements, decision to flee, and refute that
5  Gonzales was confused by the incident.  While the evidence at issue in this motion
6  is relevant for numerous reasons, it is important to the analysis of the objective
7  reasonableness of Officer Wyatt's use of force because it contextualizes a rapidly
8  unfolding series of events.  The evidence is relevant and may be considered by a
9  jury at trial.  Compare Glenn v. Washington County (9th Cir. 2011) 673 F3d 864,
10  873 fn. 8 (reversing summary judgment and noting that, for purposes of summary
11  judgment, "[w]e cannot consider evidence of which the officers were unaware.").

**B.**  **Evidence Of Facts Not Definitely Known To Officer Wyatt At The Time Of The Shooting Is Relevant To Computation Of Damages.**

14  The Ninth Circuit Model Jury Instructions outline several factors a jury
15  should consider when calculating the plaintiff's damages.  These factors include:
16  1) The loss of the decedent's love, companionship, comfort, care, assistance,
17  protection, affection, society, moral support; and 2) Funeral and burial expenses.
18  9th CIR. MODEL JURY INSTR. 5.1 and 5.2.  The public policy that underlies a cause
19  of action for wrongful death is, in part, to compensate the survivors for the loss of
20  their family member.  Barrett v. Sup.Ct. (1990) 222 CA3d 1176, 1184.  Courts
21  have recognized that lost benefits include "the personal services, advice, and
22  training the heirs would have received from the deceased, and the value of her
23  society and companionship.  'The services of children, elderly parents, or
24  nonworking spouses often do not result in measurable net income to the family
25  unit, yet unquestionably the death of such a person represents a substantial 'injury'
26  to the family for which just compensation should be paid.'"  Allen v. Toledo
27  (1980) 109 CA3d 415, 423.

As discussed more particularly below, all of the evidence at issue in this motion will aid the jury in determining what kind of "benefits" Gonzales would have been able to provide his daughter had he survived.

### C.    Evidence At Issue In This Motion Is Relevant And Admissible.

As discussed above, evidence of facts not definitely known to Officer Wyatt at the time of the shooting has a tendency to make a fact of consequence more or less probable. FRE 401. Defendant submits that the evidence at issue in this motion is admissible for the reasons described above.

### D.    Gonzales' Criminal History (Portion 1(A) Of Plaintiff's Motion.)

Evidence of Gonzales' criminal history is relevant and admissible for both liability and damages purposes.

First, from a liability perspective, Gonzales' criminal history and his extensive experience with law enforcement officers in the past is relevant to dispel any notion that Gonzales may have been confused or not known how to respond to police commands. This evidence is also relevant to explain why Gonzales fled with Wyatt trapped inside of the vehicle on this occasion, i.e. to avoid going back to jail/prison. As Gonzales accelerated rapidly, Wyatt believed the vehicle was a weapon and could be crashed or that he could be ejected from the car and seriously injured or killed. In this regard, as a general rule, evidence of crimes, wrongs, or prior bad acts is inadmissible "to prove the character of a person in order to show action in conformity therewith." FRE 404(b). However, evidence of earlier behavior is admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. As the Ninth Circuit has held, Rule 404 is a "rule of inclusion . . . . Unless the evidence of other crimes tends *only* to prove propensity, it is admissible." US v. Jackson (9th Cir. 1996) 84 F3d 1154, 1159. The intent behind the rule is not to "flatly prohibit the introduction of such evidence," but to limit the purpose for

1  which it may be introduced.  <u>Huddleston v. United States</u> (1988) 485 US 681, 687.

2  A simple limiting instruction will suffice to assuage any concerns the Plaintiff has

3  that the jury may infer that because Gonzales had engaged in criminal conduct in

4  the past, he was engaging in criminal conduct at the time of this incident.

5        Second, from a damages perspective Gonzales' criminal history – and the

6  associated incarcerations – is highly probative of the nature and potential quality of

7  Gonzales' relationship with his unborn daughter, F.E.V.  Under Ninth Circuit

8  jurisprudence, evidence of an individual's prior arrests, police contacts,

9  incarcerations, and the length of those incarcerations, are all relevant to the

10  calculation of recoverable damages at trial.  <u>Peraza v. Delameter</u> (9th Cir. 1984)

11  772 F2d 1455, 1457; <u>Green v. Baca</u> (CD CA 2005) 226 FRD 624, 657.

12        Decedent's mother, Antoinette Jo Sanchez, testified that she recalled her son

13  being housed at the Orange County Jail on 2 different occasions.  (Exh. "1,"

14  Sanchez Depo., 68:18-21).  Ms. Sanchez testified she did not know if Gonzales had

15  ever gone to prison (Exh. "1," 76:25-77:2), despite Ms. Sanchez's claim that

16  Gonzales was always with her unless he was at jail or spent the night at his friend's

17  house. (Exh. "1," 45:13-15.)  Ms. Sanchez testified that Gonzales was living with

18  her at the time he died. (Exh. "1," 45:16-18.)  In fact, Gonzales plead guilty to a

19  misdemeanor violation of Penal Code §148(a)(1) – Resisting a Peace Officer – on

20  August 21, 2006.  He was subsequently sentenced to 30 days in jail and 3 years

21  probation. (Exh. "2," Case Summary, OCSC Case No. 06NM09990 - Exh. 3 to the

22  Depo. of Antoinette Jo Sanchez.)  On July 11, 2007, Gonzales plead guilty to one

23  felony count violation of court order – criminal street gang.  (Exh. "3," Case

24  Summary, OCSC Case No. 07NF2174 - Exh. 4 to the Depo. of Antoinette Jo

25  Sanchez..)  As a result of this conviction, Gonzales was sentenced to 180 days in

26  jail and 3 years probation.  On January 22, 2009, Gonzales also plead guilty to a

27  violation of Penal Code § 422 – Criminal Threats – a felony.  He was sentenced to

28

1 | 2 years in state prison.  (Exh. "4," Case Summary, OCSC Case No. 07CF3412 -
2 | Exh. 5 to the Depo. of Antoinette Jo Sanchez..)

3 |      Ms. Sanchez's claimed limited knowledge of her son's criminal history
4 | (which resulted in multiple incarcerations in county jail and state prison) – despite
5 | the fact that her son purportedly usually lived with her – is also a telling indicator
6 | of the nature and quality of their relationship.  This claimed lack of knowledge
7 | calls into question the closeness of Gonzales' familial relationships and Defendant
8 | should be allowed to offer this evidence for that very purpose.

9 |      Plaintiff's mother, Samantha Vazquez, testified she met Gonzales shortly
10 | after he was released from incarceration at Wasco State Prison in 2009.  (Exh. "5,"
11 | Vazquez Depo., 43:11-24.)  Ms. Vazquez testified that Gonzales was cognizant of
12 | being in violation of his parole prior to his death in 2009 because "he was getting
13 | high" and knew he would not pass a drug test, which would ultimately result in
14 | him going back to prison.  (Exh. "5," 47:17-48:11.)   Ms. Vazquez also testified
15 | that Gonzalez had told her that he did not want to go back to prison.  (Exh. "5,"
16 | 76:5-11.).  This evidence is relevant to damages and the relationship decedent
17 | would have had with his daughter.

18 |    **E.**    **Gonzales' Membership In A Gang And His Tattoos (Portion 1(B)**
19 |        **Of Plaintiff's Motion.)**

20 |      Evidence that Gonzales was a documented member of the Boys from the
21 | Hood ("BFTH") criminal street gang and had tattoos associated with that gang is
22 | admissible for both liability and damages purposes.

23 |      As a preliminary matter, evidence of gang membership is admissible when it
24 | is relevant to a disputed issue.  US v. Lemon (8th Cir. 2001) 239 F3d 968, 971.  In
25 | determining whether Officer Wyatt's use of deadly force was objectively
26 | reasonable, one of the key factors is the officer's state of mind at the time of the
27 | shooting to determine reasonableness.  9th CIR. MODEL JURY INSTR. 9.22; Graham,

28 |

490 U.S. 386, 396. After Officer Wyatt had effectuated the enforcement action, he noticed Gonzales' tattoo across the knuckles of his right hand, which impressed Wyatt as being gang related. Based upon Wyatt's training and experience, the tattoo heightened his awareness as to the potential for Gonzales' violence. (Ex. "6", OCDA Interview of Wyatt, p. 55.)   Officer Wyatt's perception was correct as confirmed by plaintiff's mother and Gonzales' girlfriend and mother of FEV, Samantha Vazquez. Ms. Vazquez testified that Gonzales was a gang member associated with the Boys from the Hood criminal street gang in Anaheim. (Ex. "5," 36:12-15.)

Due to the high level of criminal activity attributed to the Boys from the Hood criminal street gang, including narcotics activity, the possession and sales of guns, explosive devices and other weapons, violent crimes, graffiti and vandalism, in an effort to protect the community, Orange County Superior Court Judge Daniel J. Didier issued an order for a permanent injunction, which precludes members of the Boys from the Hood criminal street gang from engaging in certain conduct. Gonzales was named/identified on page 2 of the permanent injunction, which he was served with. (Exh. "7," Order for Permanent Injunction, Case No. 06CC10916 – Exh. 2 to the Depo. of Antoinette Jo Sanchez.) Indeed, Gonzales was specifically identified in the Declaration of Anaheim Police Department Sergeant Bryan Janocha that led to the issuance of this gang injunction. Therein, Gonzales' efforts to intimidate a witness, who had testified against the gang, are documented.

Ms. Vazquez also testified that Gonzales had a tattoo behind his ear that read "BFTH," which stood for "Boys from the Hood" gang. (See Exh. "8" attached to the Declaration of Moses W. Johnson, Mug Shot Photos of Gonzales.) She described the tattoo across Gonzales' knuckles which read "Sick Ones." (See Exh. "9" attached to the Declaration of Moses W. Johnson, Photo of Gonzales displaying tattoo on his knuckles.) Vazquez explained that "Sick Ones" was a

clique of the Boys from the Hood gang.  It was Vazquez's testimony that it is typical for gang members to have their gang name tattooed on their body.  (Exh. "5," 49:23-51:8.)

Furthermore, as noted by the Ninth Circuit in <u>Boyd</u>, *supra*, "[i]n a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." <u>Boyd</u>, supra, 576 F3d at 944.  Here, Plaintiff has argued that Gonzales' conduct was not threatening.  Evidence that Gonzales was a documented member of the Boys from the Hood criminal street gang offers support for Wyatt's version of events and provides one possible explanation for why Gonzales acted evasively and fled. FRE 404(b).

As with Gonzales' criminal history, his gang affiliation is also relevant for purposes of damages, where it is probative of the nature and quality of Plaintiff FEV's potential for a relationship with her father.  Unlike the speculative basis on which gang evidence was offered in Lopez v. Aitken (SD CA 2011) 2011 WL 672798 *2, this evidence has a direct bearing on her potential relationship with her father, and if believed could cause the jury to value less that relationship.  The evidence has probative value which exceeds any prejudice.  Plaintiff's concerns about potential prejudice can be addressed with a limiting instruction.

### F.   **BFTH Gang Expert Bryan Janocha Should Be Allowed To Testify**

Defendant intends to call Sgt. Bryan Janocha to testify at trial, <u>as a non-retained BFTH gang expert</u>, to offer opinions regarding the Boys from the Hood criminal street gang, the injunction entered against the gang and Gonzales' participation in the gang.  Plaintiff claims that these expert opinions lack foundation, are irrelevant to the shooting in this case and are unduly prejudicial.

Plaintiff's arguments lack merit.  First, knowledge of gangs and their culture is a recognized expertise.  US v. Hankey (9th Cir. 2000) 203 F3d 1160, 1164.

-29-

1  Second, Janocha clearly has the requisite experience and background to qualify

2  him as a gang expert, and he is not challenged on this basis.  Janocha should be

3  allowed to express an opinion as to whether Gonzalez was a member of the Boys

4  From The Hood gang and the reasons therefor, and his opinions that the gang was

5  a criminal street gang within the meaning of California Penal Code §186.22.

6  Janocha should be allowed to testify as to Gonzalez' tattoos, his gang moniker,

7  field identifications, including any statement by Gonzalez that he claim Boys From

8  The Hood.

9        Based upon the standards set forth in <u>Graham v. Connor</u>, 490 U.S. 386, 397

10  (1989), the assessment of an officer's use of force is based upon the totality of the

11  circumstances and whether the use of force was objectively reasonable under the

12  circumstances.  That assessment necessarily includes Wyatt's training and

13  experience coupled with his perception of Gonzales' gang tattoo.  Sgt. Janocha's

14  testimony regarding the Boys from the Hood criminal street gang is relevant to the

15  issue of liability and, specifically, the totality of the circumstances confronting

16  Officer Wyatt prior to his use of deadly force.

17        With respect to claims of excessive force, the amount of force used by a

18  police officer is evaluated on a standard of objective reasonableness and is judged

19  from the perspective of a reasonable officer on the scene.  <u>Graham v. Connor</u>

20  (1989) 490 US 386, 396-397.  The reasonableness of any use of force—including

21  deadly force—"must be judged from the perspective of a reasonable officer on the

22  scene, rather than with the 20/20 vision of hindsight … the question is whether the

23  officer['s] actions are 'objectively reasonable' in light of the facts and

24  circumstances confronting them."  <u>Id.</u>, at 396-397; <u>Scott v. Harris</u> (2007) 550 US

25  372, 382.  Furthermore, "the calculus of reasonableness must embody allowance

26  for the fact that police officers are often forced to make split-second judgments in

27  circumstances that are tense, uncertain, and rapidly evolving."  <u>Ting v. United</u>

28

1   States (9th Cir. 1991) 927 F2d 1504, 1510.  In making this objective

2   determination, the Sixth Circuit Court of Appeals has noted:

3               We must avoid substituting our personal notions of proper police

4               procedure for the instantaneous decision of the officer at the scene.

5               We must never allow the theoretical, sanitized world of our

6               imagination to replace the dangerous and complex world that

7               policemen face every day.  What constitutes 'reasonable' action

8               may seem quite different to someone facing a possible assailant

9               than to someone analyzing the question at leisure.

10  Smith v. Freland (6th Cir. 1992) 954 F2d 343, 347.

11          Evidence of gang membership is admissible if it is relevant to a disputed

12  issue.  US v. Lemon (8th Cir. 2001) 239 F3d 968, 971.  In determining whether

13  Officer Wyatt's use of deadly force was objectively reasonable, one of the key

14  factors is the officer's state of mind at the time of the shooting in determining

15  reasonableness.  9th CIR. MODEL JURY INSTR. 9.22; Graham, supra, 490 US 386,

16  396.  Based on Gonzalez tattoo Wyatt reasonably believed he was a gang member.

17  Plaintiff request to exclude Defendant's gang expert should be rejected.

18      **G.      Results Of Gonzales' Toxicology Tests (Portion 1(C) Of Plaintiff's**

19              **Motion.**

20          During the autopsy of Gonzales' body, toxicology tests were performed,

21  which revealed that, at the time of the shooting, Gonzales was under the influence

22  of methamphetamine (meth, 0.37 mg/L) and amphetamine.

23          This evidence is relevant for a number of reasons.  First, evidence that

24  Gonzales was under the influence of various drugs at the time of the shooting is

25  probative of his behavior at the time of the shooting.  Luchtel v. Hagemann (9th

26  Cir. 2010) 623 F3d 975, 980 (citing hospital medical report showing that plaintiff

27  was under the influence of crack cocaine in considering whether the police officers

28

1  used a reasonable amount of force while arresting her); <u>Boyd v. City and County of</u>

2  <u>San Francisco</u> (9th Cir. 2009) 576 F3d 938, 944 (holding that evidence that the

3  decedent was "on drugs" at the time of the incident was probative of the police

4  officers' claim that the decedent was "acting erratically … instead of following

5  police commands"); <u>Cotton v. City of Eureka</u> (ND CA 2010) 2010 WL 5154945

6  ("The EPD officers and percipient witnesses in this case observed that the

7  Decedent's behavior at the Rescue Mission at the time of his arrest was erratic and

8  abnormal, and possibly the result of the influence of illegal drugs.  Evidence that

9  the Decedent was under the influence of LSD at that time may corroborate those

10  observations, and thus, is relevant and admissible."); <u>Lopez v. Aitken</u> (SD CA

11  2011)  2011 WL 672798 (same); <u>T.D. W. v. Riverside Cnty.</u> (CD CA 2010) 2010

12  WL 1006618 (same).

13      In this instance, the evidence of Gonzales' toxicology results is probative of

14  Wyatt's claim that he observed Gonzales driving erratically as follows:  On

15  September 25, 2009 at 2:00 a.m., Wyatt and his partner Matthew Ellis were en

16  route to a call for service regarding a transient sleeping in the area of South Street

17  and State College Blvd.  They were stopped, facing a red signal in the No. 2

18  westbound left turn lane of Lincoln Avenue at State College Blvd.  Another

19  vehicle, later identified as a 1991 Mazda MPV with California license plate

20  5AYA838, was stopped in the No. 1 westbound left turn lane of Lincoln Avenue.

21  The signal phased to green and during their southbound turn, the Mazda veered

22  into their lane and Ellis was forced to brake aggressively to avoid a collision with

23  the vehicle.  The Mazda turned into the gas station located at the southwest corner

24  of Lincoln Avenue and State College Blvd.  Ellis and Wyatt continued to the call

25  for service; however, they were unable to locate the transient.

26

27

28

The officers returned to the area of Lincoln Avenue and State College Blvd. and saw the Mazda was still at the gas station where it had pulled in following the previous traffic violation. Ellis parked facing eastbound on Lincoln Avenue, West of the gas station so they could observe the Mazda. Ellis saw Gonzales enter the Mazda and drive southbound on State College Blvd. The officers followed the Mazda, watching to see if any enforcement action was necessary, such as citation for impaired driving. The Mazda turned West on Santa Ana Street and the officers followed.

Officer Ellis observed the Mazda weaving within its traffic lane. At 2:11 a.m., Wyatt advised headquarters over his police radio of their intended traffic stop for the van's previous left-turn violation, and activated the patrol car's emergency lights to conduct the traffic stop. The Mazda van continued westbound for 200 feet and subsequently made a wide northbound turn on Bond Street, driving left of center of the roadway, northbound in the southbound lane almost striking the opposing curb, an unsafe turn.

Second, evidence that Gonzales was under the influence of various drugs at the time of the shooting would not be offered as impermissible character evidence. Instead, the evidence would be offered for the purpose of assisting the jury in understanding Gonzales' behavior during the subject incident, including his plan, motive, opportunity and intent when fleeing from the police and attempting to evade capture. FRE 404(b). In addition, the evidence will be offered to explain the decedent's physical movements immediately prior to the shooting. US v. Murray (7th Cir. 1996) 89 F3d 459 (allowing, in trial of defendant for being felon in possession of firearm, evidence that crack cocaine was found in car at time firearm was discovered because evidence gave jury more complete story concerning charged crime and defendant's motive to possess firearm); US v. Bitterman (7th

Cir. 2003) 320 F3d 723 (allowing, in trial of defendant for armed robbery, evidence concerning defendant's past drug use and heroin addiction to establish defendant's motive to commit robbery); US v. Fuller (8th Cir. 1989) 887 F2d 144 (allowing, in defendant's trial for possession of sawed-off shotgun, evidence of drug paraphernalia seized at apartment where shotgun was found, given the close and well known connection between firearms and drugs); US v. Cunningham (7th Cir. 1996) 103 F3d 553 (allowing, in trial of nurse for tampering with consumer product with reckless disregard for life of another, evidence that nurse's license had been previously suspended for stealing painkillers from her employer, where evidence furnished basis for inference that she had falsified test results in order to enable her to continue to feed her addiction without detection and without losing access to "free" supply of addictive substance).

Third, Gonzales' drug use immediately prior to the shooting are probative of his fleeing from police.

Fourth, the drugs found Gonzales' bloodstream post-mortem bear directly on the damages issues in this case, including Gonzales' life expectancy and as a factor that would potentially impact his relationship with is daughter.

## H.     The Folded Knife Found On The Driver's Side Floor (Portion 1(D) Of Plaintiff's Motion.)

When Officers Wyatt and Ellis effectuated the enforcement action upon Gonzales, both officers observed Gonzales reaching along the driver's side and passenger seat floor boards. Wyatt testified that he observed Gonzales reaching with his right hand towards the area between the driver and passenger seats. (Exh. "10," Wyatt Depo., 47:1-4.) Wyatt also observed Gonzales reaching down between the driver's side and the driver's door panel. (Exh. "10," 53:20-22.) Wyatt testified that one of his concerns at the time he shot Gonzales arose from Gonzales' continued efforts to reach for something in the vehicle. (Exh. "10," 98:21-23.)

1   During the inspection of the Mazda on scene by the Orange County Crime Lab,

2   Senior Forensic Scientist L. Pena-Sanchez located a folded blue knife on the

3   driver's side floor.  (Exh. "11," OCSD Identification Bureau Call Slip Notes taken

4   by L. Pena-Sanchez ref FR# 09-52655.)

5       Again, the Ninth Circuit's holding in <u>Boyd</u>, *supra*, is instructive: "[i]n a case

6   such as this, where what the officer perceived just prior to the use of force is in

7   dispute, evidence that may support one version of events over another is relevant

8   and admissible." <u>Boyd</u>, supra, 576 F3d at 944.  The fact that a folding knife was

9   found on the driver's side floor of the Mazda provides a possible explanation for

10   why Gonzales continued to reach around the seats and toward the floor throughout

11   this incident and obviously confirms the officers' belief that Gonzales was

12   attempting to locate the concealed weapon. FRE 404(b).

13       Furthermore, from a damages perspective, Gonzales knew he was violation

14   of his parole.  If he had been found to be in possession of the weapon in addition to

15   the parole violation, he would have faced incarceration for an extended period of

16   time.  As with his prior incarcerations, this would have had a profound impact on

17   his relationship with his daughter and his ability to provide her with gifts, benefits,

18   household services, companionship, comfort, care, assistance, protection, affection,

19   society, moral support, training and guidance.  9th Cir. Model Jury Instr. 5.1.

### III.   <u>CONCLUSION</u>

21       Based upon the foregoing, defendant respectfully requests that the Court

22   deny the plaintiff's Motion in Limine #1 portions (A) through (D).

### <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE WYATT'S SUBJECTIVE STATE OF MIND</u>

### I.   <u>ARGUMENT</u>

27       Whether force is excessive under the Fourth Amendment depends upon

-35-

1  the objective facts facing the officer at the time. The officer's subjective intent is
2  irrelevant.  In many excessive force cases, defendants seek to justify the use of
3  deadly force by explaining to the jury that the officer was in fear for his life.
4  Testimony is also often admitted explaining the officer's subjective thoughts and
5  past experiences in order to provide a backdrop against which defendants argue
6  why it was reasonable for the officer to believe that at the time of the use of deadly
7  force, death or serious bodily injury was imminent. This is often captivating and
8  personal testimony and it is effective in persuading jurors to conclude that if the
9  officer claims that he feared for his or her life – or if the officer was in fear for his
10 or her life -- then the use of deadly force must have been reasonable.

11         However, this is neither the proper inquiry nor the proper legal standard. In
12 order for deadly force to be reasonable for Fourth Amendment purposes, it is not
13 enough that an officer claims to be – or even is -- in fear for his or her life. While
14 what the officer perceived during the incident *is* relevant, the cornerstone of the
15 Fourth Amendment inquiry is not whether the fear of imminent death or serious
16 bodily injury was present. Rather, the necessary question is instead whether *that*
17 *fear was reasonable.*  For this reason, the Ninth Circuit has repeatedly held, "a
18 simple statement by an officer that he fears for his safety or the safety of others is
19 not enough; there must be objective factors to justify such a concern. In short, an
20 officer's use of force must be objectively reasonable based on his contemporaneous
21 knowledge of the facts" and not the officer's subjective intentions, thoughts or
22 beliefs. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001); *Gravelet-*
23 *Blondin v. Shelton,* 728 F.3d 1086, 1091 (9th Cir. 2013), cert. denied, (2014) 134
24 S.Ct. 1292 ("Defendants also urge us to consider Jack's then-unlocated gun as a
25 basis for the officers' belief that Blondin posed a threat. As the district court
26 observed, the officers' purported fear that Blondin might have a gun was 'based on
27 nothing more than the reality that any civilian could be armed, speculation that
28

1  failsto distinguish [Blondin] from any bystander at a crime scene.'"); *Nelson v.*

2  *City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012) ("**the threat analysis must be**

3  **based on objective factors**"); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir.

4  2011). In this case, it is anticipated that Officer Wyatt will testify that he believed

5  Mr. Gonzales posed a threat at the time he fired because he thought, among other

6  things, that Mr. Gonzales could have been a gang member, he could have been

7  armed, he could have been under the influence of drugs or alcohol and because of

8  the possibility that Officer Wyatt might be ejected from the vehicle. However, as

9  the Ninth Circuit noted in *Gravelet-Blondin*, Officer Wyatt's beliefs are nothing

10  more than the reality that any civilian in that area could be a gang member, could

11  be armed, could have be under the influence of alcohol or drugs, and that any car

12  going 30 miles per hour risks the possibility of getting into an accident. As

13  plaintiffs anticipate will be the case with most of the claims made by Officer Wyatt

14  as to why he believed Mr. Gonzales to pose a threat, there are no objective facts to

15  bring Officer Wyatt's speculation into the scope of reasonableness such that the

16  use of deadly force in this case was justified.

17  //

18
19
## DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE WYATT'S SUBJECTIVE STATE OF MIND

20  In general, all claims of excessive force, whether deadly or not, should be

21  analyzed under the objective reasonableness standard of the 4th Amendment set

22  forth in <u>Graham v. Connor</u> (1989) 490 US 386, 397, and <u>Tennessee v. Garner</u>

23  (1985) 471 US 1; <u>Blanford v. Sacramento County</u> (9th Cir. 2005) 406 F3d 1110,

24  1115.

25  In <u>Blanford</u>, the Ninth Circuit reiterated that the Graham standards were

26  applicable: "Determining whether the force used to effect a particular seizure is

27
28

1  reasonable under the Fourth Amendment requires a careful balancing of the nature
2  and quality of the intrusion on the individual's Fourth Amendment interests against
3  the countervailing governmental interests at stake." Graham, supra, 490 U.S. at
4  396. . . . . This balancing test entails consideration of the totality of the facts and
5  circumstances in the particular case, including "the severity of the crime at issue,
6  whether the suspect poses an immediate threat to the safety of the officers or
7  others, and whether he is actively resisting arrest or attempting to evade arrest by
8  flight." Id. Blanford, supra, 406 F3d at 1115.  Similarly, in Jackson, the court held
9  that the "reasonableness" of a particular use of force must be judged from the
10  perspective of a reasonable officer on the scene, rather than with the 20/20 vision
11  of hindsight.   Jackson v. City of Bremerton (9th Cir. 2001) 268 F3d 646, 651.  The
12  Jackson Court said that ". . . the court's consideration of reasonableness must
13  embody allowance for the fact that police officers are often forced to make split-
14  second judgments-in circumstances that are tense, uncertain, and rapidly evolving-
15  about the amount of force that is necessary in a particular situation." Id.  "'Not
16  every push or shove, even if it may later seem unnecessary in the peace of a
17  judge's chambers' [sic] violates the Fourth Amendment." Id. (quoting Graham,
18  supra, 490 US at 396).  "In evaluating the nature and quality of the intrusion, [a
19  court] must consider 'the type and amount of force inflicted'" in making an arrest.
20  Id. at 651-652 (quoting Chew v. Gates (9th Cir. 1994) 27 F3d 1432, 1440.
21          Included in the above analysis in what the officer perceived and what he
22  reasonably believed.  The fact that Officer Wyatt feared that the speeding minivan
23  would be crashed and he could be killed or seriously injured is relevant to judging
24  his use of force and is the heart of this case.
25
26  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
     **PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE SPECULATIVE**
27
28

## TSSTIMONY BY DEFENDANT'S ACCIDENT RECONSTRUCTION EXPERT, JAMES LANDERVILLE

## I.    ARGUMENT

In an effort to bolster Officer Wyatt's conflicting testimony about the speed of the vehicle at the time of the shots, Defendant retained accident reconstructionist, James Landerville. Mr. Landerville opines as to the speed of the Mazda at the time of its impact with the white truck – approximately 30 miles per hour. In order to calculate the rate of speed up until the point of impact, Mr. Landerville simply calculates average speed over time and distance. However, Mr. Landerville also speculates as to what "could have happened" in a hypothetical and unfounded scenario in which Officer Wyatt had not shot Mr. Gonzales in the head. Mr. Landerville speculates that Mr. Gonzales would have accelerated and driven faster. Mr. Landerville also speculates how fast Mr. Gonzales could or might have driven and states that the vehicle could have reached speeds up to 50 miles per hour at the next intersection. Mr. Landerville then calculates how the risk of injury car crashes increase with every corresponding increase in the rate of speed. Although the speed limit was 25 miles per hour, and Mr. Landerville's opinion is that Mr. Gonzales was driving only a few miles over the speed limit, he speculates that Mr. Gonzales would have accelerated and that the risk of a car crash and injury to Officer Wyatt would have increased six times had Officer Wyatt permitted the car to accelerate for an additional two seconds. In other words, Mr. Landerville opines that Officer Wyatt would have faced a greater risk of injury had he not shot and killed Mr. Gonzales when he did. Partow Decl. at ¶ 6, Exhibit C to Partow Decl.

Mr. Landerville's opinion in this regard is without foundation and wholly speculative. There is no evidence that Mr. Gonzales was "speeding". There is no evidence that Mr. Gonzales was going to speed. There is no evidence that Mr. Gonzales would have driven faster than he was driving when Officer Wyatt fired.

1  There is no evidence that Officer Wyatt prevented Mr. Gonzales from speeding by
2  shooting and killing him. Indeed, Mr. Landerville cannot even pinpoint the speed of
3  the vehicle at the time that Officer Wyatt fired. These opinions are based in
4  conjecture, violate FRE 702 as they are not based on the facts of this case, and they
5  should be excluded.

### DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE SPECULATIVE TESTIMONY BY DEFENDANT'S ACCIDENT RECONSTRUCTION EXPERT, JON LANDERVILLE

9  Defendant retained expert Jon Landerville on accident reconstruction. This
10 Court should be hesitant to exclude an expert's testimony that does assist the trier
11 of fact. An expert's testimony can assist the trier of fact even if it does not resolve
12 an issue with complete certainty. Walker v. Soo Line R.R. Co. (7th Cir. 2000) 208
13 F3d 581, 590; Primiano v. Cook (9th Cir. 2010) 598 F3d 558, 565–566 (judge
14 should admit medical expert testimony if doctors "would accept it as useful and
15 reliable" even though it is not "conclusive," because "medical knowledge is often
16 uncertain"). "[E]xperts are just witnesses, and they need not be purveyors of
17 ultimate truth in order to be allowed on the stand." Jahn v. Equine Services, PSC
18 (6th Cir. 2000) 233 F3d 382, 392 (inability of veterinary experts to state with
19 certainty cause of death did not render experts' testimony inadmissible).
20 "Although courts cast their assessment of how much speculation is permissible in
21 various verbal forms, their conclusions ... come down to this:  A certain amount of
22 speculation is necessary, an even greater amount is permissible ... and goes to the
23 weight of the testimony...." Group Health Plan, Inc. v. Philip Morris USA, Inc.
24 (8th Cir. 2003) 344 F3d 753, 760.

25  Mr. Landerville's opinions are set forth in his report (Exhibit 12) on pages 9-
26 10:

27  1) The Mazda MPV was accelerated abruptly by Mr. Gonzalez without

1 stopping at a four-way stop in a residential area with a 25 MPH speed limit.

2     2) Accelerating continuously, without intervention by Officer Wyatt, the

3 Mazda could have reached a speed of about 50 MPH through the next four-way

4 stop and highway speed 100 feet beyond the intersection with Elm.

5     3) During the event, the Mazda reach a minimum speed of approximately

6 32 MPH and slowed to approximately 30 MPH at impact with the parked

7 Mitsubishi pickup.

8     4) The risk of being involved in an injury crash increases exponentially for

9 motorists traveling much faster than the median speed.  Thus, with the Mazda

10 accelerating over the speed limit, the injury risk to Office Wyatt was increasing

11 significantly.  The risk of involvement in a casualty crash would be 6 times greater

12 if Officer Wyatt allowed the vehicle to accelerate for 2 more seconds.

13     5) Use of lap/shoulder seat belts reduces the risk of fatal and moderate-to-

14 critical injury to front seat vehicle occupants.  Thus, the injury risk to Officer

15 Wyatt, as an unbelted occupant without a passenger's side air bag, would be

16 significant.

17     Mr. Landerville also did a rebuttal report to Plaintiff's expert report.

18 (Exhibit 13).  He further opined on page 6 of his rebuttal report:  The speeds of the

19 Mazda if the Officer did not intervene were calculated using continuous

20 acceleration from the Mazda prior impact, which was determined form the physical

21 evidence.  The acceleration data used for the Mazda was based on published test

22 data (Road & Track test of a Mazda MPV).

23     Plaintiff's arguments go to the weight of Mr. Landerville's testimony, not its

24 admissibility.  Plaintiff can cross-examine Mr. Landerville at trial in an attempt to

25 show that his opinions are weak.

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 4 TO BIFURCATE LIABILITY AND COMPENSATORY DAMAGES**

## I.   ARGUMENT

The central issue in this case is whether Officer Wyatt was justified in using deadly force when he shot and killed Mr. Gonzales. As set forth in greater detail above, the United States Supreme Court and Ninth Circuit precedent confine the objective reasonableness analysis of the officer's actions to the facts known to officer at the time of the use of deadly force. *Graham v Connor*, 490 U.S. 386, 397 (1989).

Defendant will seek to introduce a host of evidence concerning Mr. Gonzales' prior bad acts and/or encounters with the law, his criminal history, drug evidence, alleged gang involvement, his tattoos and other highly prejudicial testimony. Such evidence is wholly immaterial and unduly prejudicial to plaintiff and plaintiff contends that it should be excluded in its entirety.

However, if the Court rules any of this evidence admissible because the Court finds it relevant to damages, Plaintiffs respectfully request that liability be bifurcated from compensatory damages. Under Fed. R. Civ. Proc. 42(b), the Court has the indisputable discretion to structure the trial for "convenience, to ***avoid prejudice***, or to expedite and economize." Fed. R. Civ. Proc. 42(b); *See*, e.g. *In re Marcos Human Rights Litigation*, 103 F. 3d 767, 782 (9th Cir 1996) (the trifurcation of a trial into liability, exemplary damages and compensatory damages phases upheld); *see also, Arthur Young and Company v United States District Court*, 549 F 2d 686, 697-98 (9th Cir. 1997); *Krocka  v City of  Chicago*,  203 F. 3d 507 (7th Cir.  2000) (upholding bifurcation of liability and damages issues in ADA case).

Courts must consider whether severance is in the interests of justice and whether its end constitutes a fair and impartial trial. *Arnold v. Eastern Air Lines*, Inc., 712 F.2d 899 (4th Cir.1983) (en banc), cert. denied, 464 U.S. 1040 (1984); *In re E. &*

1  *S. Districts Asbestos Litig.*, 772 F. Supp. 1380, 1387 (E.D.N.Y. 1991) aff'd in part,

2  rev'd in part sub nom. *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.

3  1992); *Beauchamp v. Russell*, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982), citing *Moss*

4  *v. Associated Transport, Inc.*, 344 F.2d 23 (6th Cir. 1965). "The touchstone, in

5  reviewing bifurcated proceedings, is whether the party bearing the burden of proof

6  was unfairly prejudiced by the procedures employed." *U. S. Gypsum Co. v. Schiavo*

7  *Bros.*, 668 F.2d 172, 181 (3d Cir. 1981), citied by *In re Carroll*, 865 F.2d 263, *3 (9th

8  Cir. 1988).

9       In police misconduct civil rights cases, courts routinely sever trials to protect

10 against prejudice *to defendant police officers* where the plaintiffs seek to admit

11 evidence of past conduct, prior instances of excessive force, prior complaints and

12 other civil lawsuits against the officers and the law enforcement agency. *See e.g.*,

13 *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (trial of the individual

14 police officers bifurcated from the Chief and City to avoid prejudice where plaintiff

15 sought to introduce evidence of police dog attacks on others); *Larez v. City of Los*

16 *Angeles*, 946 F.2d 630, 634 (9th Cir. 1991) (bifurcated trial of the individual officers

17 from the Chief and the City); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 518

18 (9th Cir. 1999); *Phillips v. City of New York*, 871 F. Supp. 2d 200 (E.D.N.Y. 2012);

19 *Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 925 (S.D. Ohio 2001).

20      As a corollary, the same protection against prejudice should be afforded to the

21 plaintiffs when defendant officers seek to introduce prejudicial evidence that is

22 (arguably) relevant to damages but is wholly irrelevant to liability.  In this case, if this

23 court excludes evidence of other bad acts of Defendant Officer Wyatt, such as the

24 other civil rights claims pending against him and allegations that he threatened and

25 intimidated a criminal defendant into confessing to a murder (which the defense

26 claims is irrelevant to liability in this case), then this court should also exclude similar

27 character evidence as to Mr. Gonzales, such as his prior contacts with law

28

enforcement, his alleged membership in a gang, and his drug use (which plaintiff claims is irrelevant to liability in this case.

If the Court admits the evidence that plaintiff seeks to exclude because it deems it relevant to damages *and* it refuses to bifurcate trial, then the court will have ensured that plaintiff's trial is patently unfair. Although Officer Wyatt knew nothing about Mr. Gonzales and had never seen him before, defendants will transform in this case from a trial about the reasonableness of Officer Wyatt's conduct into a trial about crime, drugs and gangs. The jury will hear every defense witness testify somehow about gangs, their propensity for violence, their hostility toward law enforcement, how they obtain the tattoos that Mr. Gonzales had on his hands and body, the types of crimes that gangs commit, the types if gangs in the City of Anaheim, gang injunctions, and the stigma of drug and alcohol use. Defendant's case will bear no focus whatsoever on the objective facts known to Officer Wyatt at the time of his use of deadly force and the jury will be unable to adhere to the *Graham* analysis.

## DEFENDANT'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4 TO BIFURCATE LIABILITY AND COMPENSATORY DAMAGES

### I.   INTRODUCTION

In Plaintiff's Motion in Limine #4, Plaintiff asks the Court to bifurcate the trial into 2 phases – liability and damages – if the Court determines that evidence concerning the decedent's past (gang affiliation, tattoos, criminal history, drug use) is admissible. Essentially, Plaintiff seeks to inflate what would otherwise be a 4-5 day jury trial into a trial that may well last twice that long. Plaintiff does not address all of the factors the Ninth Circuit has held should be considered when determining whether bifurcation is appropriate. Rather, they focus on only 2 factors (purported judicial economy and prejudice) in isolation. Defendant submits

that when all factors are analyzed – as opposed to 2 factors in isolation – it is abundantly clear that bifurcation is unnecessary and unwarranted.

## II.   UNDER THE NINTH CIRCUIT'S LEGAL STANDARD, BIFURCATION IS INAPPROPRIATE AND UNWARRANTED.

Federal Rules of Civil Procedure, Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FRCP 42(b).  The decision whether to bifurcate a proceeding under Rule 42(b) is committed to the sound discretion of the district court.  Davis & Cox v. Summa Corp. (9th Cir. 1985) 751 F2d 1507, 1517.  In the Ninth Circuit, "**bifurcation is the exception rather than the rule of normal trial procedure.**" Hangarter v. Provident Life & Acc. Ins. Co. (9th Cir. 2004) 373 F3d 998, 1021.  The party requesting bifurcation has the burden of proving that it is warranted in that particular case. Spectra-Physics Lasers, Inc. v. Uniphase Corp. (ND CA 1992) 144 FRD 99, 102.

When assessing whether bifurcation is appropriate, 4 factors should be analyzed: (1) the complexity of the issues; (2) whether there would be a risk of jury misunderstanding in a non-bifurcated trial; (3) whether bifurcation would facilitate disposition of the issues; and (4) whether bifurcation would prejudice either of the parties. Hirst v. Gertzen (9th Cir. 1982) 676 F2d 1252, 1261; Arnold v. United Artists Theatre Circuit, Inc. (ND CA 1994) 158 FRD 439, 459.  When each of these factors is analyzed in the context of this case, it is abundantly clear that bifurcation is unwarranted.

### A.   Complexity Of The Issues.

Completely ignoring the first factor, Plaintiff does not even reference the complexity of the issues in the case, let alone establish that the instant lawsuit is

comprised of overly complex legal issues that warrant separation of this case into 2 distinct phases. Plaintiff does not provide any evidence or argument concerning how the damages portion of their case is excessively complex or how the calculation of damages warrants another trial altogether solely related to that issue. In fact, Plaintiff's own evidence suggests the opposite. The only damages Plaintiff seeks in this case are damages for the decedent's pain and suffering (which the defendants contend are not recoverable) and damages for Plaintiff F.E.V.'s "loss of Anthony Sanchez Gonzales' love, companionship, comfort, care, assistance, protection, affection, society, moral support." Indeed, Plaintiff has not designated any expert witnesses to testify concerning damages. Certainly, if Plaintiff anticipated that the damages calculation would be particularly intricate or complex, she would have designated an expert to assist the trier of fact in calculating damages.

In the Ninth Circuit, cases are often bifurcated in instances where the calculation of damages presents unique difficulties that are not applicable to normal types of cases. Hangarter, supra, 373 F3d at 1021. This difficulty is most often present in cases where the court's analysis of extensive evidence disclosed in discovery is needed to determine damages. Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc. (CD CA 2001) 2001 WL 501354; Novopharm Ltd. v. Torpharm, Inc. (ED NC 1998) 181 F.R.D. 308; Amylin Pharms., Inc. v. Regents of Univ. of Minn. (SD CA 1998) 1998 WL 35031973. For instance in In re Marcos Human Rights Litigation (9th Cir. 1996) 103 F3d 767, which Plaintiff cites as supporting bifurcation, the trial was trifurcated into 3 phases: liability, exemplary damages and compensatory damages. In concluding that the trial court did not abuse its discretion in trifurcating the trial, the Ninth Circuit noted that "[t]he compensatory-damage phase presented much more complex questions, requiring the presentation of testimony taken in the Philippines before a special master." Id.

at 782.  Moreover, the computation of compensatory damages – which involved assessing the damages of over 10,000 class members – required that the claims be separated into categories (torture, summary execution, disappearance), that certain factors be analyzed relative to each category, and a  recommendation from the Special Master (after a complex calculation) of a $767,491,493.00 award to the victims.  The trial on compensatory damages lasted the month of "January 1995" (id. at 784), during which time the jury heard expert testimony from statisticians and testimony from 137 different class members.  Deliberations alone lasted 5 days.

The damages assessment in this case is not remotely as complex as those cases in which bifurcation (or trifurcation) was warranted and does not support bifurcation in this case.

**B.      Risk Of Misunderstanding A Non-Bifurcated Trial.**

As with the complexity of the issues factor, the plaintiff has not addressed the risk of misunderstanding factor that is integral to assessing whether bifurcation is appropriate.  The plaintiff has provided no evidence in the form of exhibits or declarations to buttress her argument that a non-bifurcated trial would be inappropriate and cause misunderstanding.

**C.      Facilitation Of Disposition Of The Issues.**

Plaintiff contends that a bifurcated trial will best serve judicial economy.  This argument ignores reality.  In addition to 2 opening statements, 2 closing arguments and 2 separate jury deliberations, numerous witnesses who testified during the liability phase would have to be re-called to testify during the damages phase, just to address the isolated topics Plaintiff does not want the jury to hear during the liability phase.

Additionally, other courts have considered and rejected Plaintiff's argument that a defense verdict in the liability phase would render a damages phase moot.

1  GEM Acquisitionco, LLC v. Sorenson Group Holdings, LLC (ND CA 2010)  2010
2  WL 1729400, at *3 ("this argument could be made in almost any case, and does
3  not present a strong basis for bifurcation.").

4      **D.    Prejudice To The Parties.**

5          The primary reason Plaintiff seeks bifurcation is because she believes certain
6  evidence would be "highly prejudicial" during the liability phase.  This argument
7  lacks merit.

8          As a preliminary matter, the evidence Plaintiff does not want a jury to hear
9  during the liability phase (Gonzales' criminal history, drug use, gang affiliation,
10 tattoos, etc.) is not only relevant for purposes of damages, it would be relevant and
11 admissible during a liability phase.  For instance, evidence that Gonzales was
12 under the influence of various drugs at the time of the shooting is probative of his
13 behavior at the time of the shooting.  Luchtel v. Hagemann (9th Cir. 2010) 623 F3d
14 975, 980 (citing hospital medical report showing that plaintiff was under the
15 influence of crack cocaine in considering whether the police officers used a
16 reasonable amount of force while arresting her); Boyd v. City and County of San
17 Francisco (9th Cir. 2009) 576 F3d 938, 944 (holding that evidence that the decedent
18 was "on drugs" at the time of the incident was probative of the police officers'
19 claim that the decedent was "acting erratically ... instead of following police
20 commands").  The drugs in Gonzales' bloodstream may seek to explain the
21 decedent's conduct on the day of the shooting.  9th CIR. MODEL JURY INSTR. 9.22.

22         Finally, even if the Court were to find that evidence concerning Gonzales'
23 history and drug use and conduct on the day of the incident was only admissible
24 for purposes of damages, the plaintiff's concerns about the evidence can be
25 assuaged with a simple limiting instruction from the Court.

26 **III.    CONCLUSION**

27         Based on the foregoing, defendant respectfully request that this Court deny

plaintiff's Motion in Limine #4, which seeks bifurcation of the trial into 2 phases: liability and damages.

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF OFFICER WYATT BEING NAMED IN OTHER CIVIL LAWSUITS

## I.    INTRODUCTION

This action arises out of an officer involved shooting that occurred on September 25, 2009.  Plaintiff's remaining claim is for an alleged violation of the 4th amendment under section 1983 for use of deadly force in this officer involved shooting/fatal case.

Officer Daron Wyatt ("Wyatt") used reasonable force when he shot decedent in self-defense, a legitimate law enforcement goal.  The evidence establishes that Officer Wyatt shot decedent in self-defense because decedent was speeding down the street going at least 30 MPH with Officer Wyatt trapped inside the minivan unbelted.  Officer Wyatt reasonably believed decedent was going to crash the minivan and kill Officer Wyatt or seriously injure him.

The defendant anticipates that at the trial of this action, the plaintiff will seek to comment upon, refer to, or introduce evidence or testimony concerning other civil lawsuits, in which Daron Wyatt was named as a defendant, and reference to prior employment with multiple law enforcement agencies early on in Daron Wyatt's career.  Specifically, the defendant anticipates that the plaintiffs will seek to introduce evidence of the following:

1.    The fact that Daron Wyatt has been a named defendant in other civil lawsuits including a recent suit in which the jury returned a defense verdict; and

2. The fact that Daron Wyatt worked for three different law enforcement agencies in addition to doing private investigation work between the years of 1986 and 1995.

Because this type of evidence lacks relevance, constitutes nothing more than inadmissible character evidence, and the probative value of such evidence is substantially outweighed by the risk that its presentation would waste time, confuse the issues, and mislead the jury, the defendant requests that all such evidence be excluded at trial.

## II. EVIDENCE AT ISSUE

During the deposition of Daron Wyatt, plaintiff's counsel questioned Wyatt concerning proceedings in which he was previously deposed. Wyatt testified he had been deposed in 3 to 5 cases previously and that he had been named as a defendant in other civil lawsuits on 4 occasions. Wyatt also explained that 2 of the lawsuits arose from the service of search warrants, and the other 2 included allegations against Wyatt in his supervisory capacity. Furthermore, Wyatt testified that all of the foregoing lawsuits related to incidents that took place while he was employed by the Placentia Police Department. See, Exhibit "10" (Wyatt Depo., 4:11-5:20). Plaintiff's counsel also questioned Wyatt regarding his past employment as a peace officer. Wyatt testified that he worked for three law enforcement agencies between the years of 1986 and 1995 including Tustin Police Department, Santa Ana Unified School District Police Department and Imperial Police Department. In addition to his employment as a peace officer during this time frame, Wyatt also worked for a private investigations firm. (Exhibit "10," 9:11 - 11:05.).

## III. ARGUMENT

### A. Any Evidence Concerning Other Civil Lawsuits And Prior Employment Is Irrelevant In This Case.

1    <u>Federal Rules of Evidence</u>, Rule 402 provides that evidence which is not

2    relevant is not admissible.  FED. R. EVID. 402; <u>United States v. Schaff</u> (9th Cir.

3    1991) 948 F2d 501.  Evidence is relevant if it has any tendency to make the

4    existence of any fact that is of consequence to the determination of the action more

5    probable or less probable than it would be without the evidence.  FED. R. EVID.

6    Rule 401.

7       Recently, in <u>United States v. Bailey</u>, (9th Cir. 2012) 696 F3d 794, the Ninth

8    Circuit announced that it "agree[d] with the reasoning" of numerous courts that

9    excluded evidence of "inconclusive allegations of ... similar behavior."  <u>Id</u>. at 800.

10   The Court noted:

12       We find additional support for the notion that

13       inconclusive allegations of prior similar behavior is not

14       useful.  In the civil rights context, courts are reluctant to

15       admit evidence of prior excessive force complaints

16       against a police officer if the complaints are

17       unsubstantiated.  For example, in <u>Sibrian v. City of Los</u>

18       <u>Angeles</u>, 288 Fed.Appx. 385 (9th Cir. 2008), an

19       unpublished disposition, the panel upheld the district

20       court's decision to exclude evidence of prior complaints

21       involving the defendant police officer stating that the

22       officer was exonerated on three of the prior incidents and

23       that the evidence was inconclusive on the fourth incident.

24       <u>See also</u>  <u>Hopkins v. Andaya</u>, 29 F.3d 632, 1994 WL

25       396202, at *2 (9th Cir. 1994) (unfounded citizen

26       complaints were not relevant in Section 1983 action).

27       Other circuits have reached the same conclusion. <u>See</u>

-51-

> United States v. Taylor, 417 F.3d 1176, 1179 (11th Cir.
> 2005) (district court did not abuse discretion in denying
> plaintiff's request to offer unfounded citizen complaints
> to prove police officer's bias and motive).  Even where
> the defendant police officer had not been exonerated on a
> civilian complaint, the Second Circuit stated that "the
> relevance of a single unsubstantiated charge is obviously
> limited."  Berkovich v. Hicks, 922 F.2d 1018, 1023 (2nd
> Cir.1991).

Id. at 800, fn. 6.

The only issue to be decided in this action is whether Defendant Wyatt is liable to Plaintiff for violation of her civil rights under the 4th Amendment for deadly force.  Therefore, the only evidence relevant in this case is evidence that pertains to the officer involved shooting of decedent Gonzales.  Evidence concerning other lawsuits or Wyatt's prior employment with other police agencies has no relevance to liability, Wyatt's interaction with decedent Gonzales or the determination of whether Plaintiff's civil rights were violated when he used deadly force.  This evidence has no tendency to make the existence of any fact that is of consequence to the determination of this action more or less probable.  Evidence regarding the facts and circumstances surrounding unrelated civil lawsuits or prior law enforcement employment have absolutely no tendency in reason to prove or disprove the objective reasonableness of the defendant officer's actions in this case.  Therefore, it is respectfully submitted that such evidence should be excluded.

**B.** **Evidence Relating To Other Civil Lawsuits and Prior Employment Is Impermissible Character Evidence.**

Federal Rules of Evidence, Rule 404 provides that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on

a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1).  As aptly stated by the Sixth Circuit in United Stated v. Phillips (6th Cir. 1979) 599 F.2d 134, 136: "Two concerns are expressed by the first sentence of Rule 404(b):  (1) that the jury may convict a 'bad man' who deserves to be punished – not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged."  Id. at 136.  Opining on the use of such character evidence, the California Law Revision Commission noted:

> Character evidence is of slight probative value and may
> be very prejudicial.  It tends to distract the trier of fact
> from the main question of what actually happened on the
> particular occasion.  It subtly permits the trier of fact to
> reward the good man and to punish the bad man because
> of their respective characters despite what the evidence in
> the case shows actually happened.

FED. R. EVID. 404, Adv. Comm. Notes, citing, CAL. LAW REVISION COMM'N, REP., REC. & STUDIES, 657-58 (1964).

Moreover, "prior bad acts" in the context of Rule 404 are not limited to criminal acts; rather, the rule applies broadly to "wrongs or acts."  United States v. Senak (7th Cir. 1975) 527 F2d 129, 143 ("[T]he criminality of other acts does not affect their admissibility; either they are relevant or they are not, in which case they are rejected; and the only bearing of their having the quality of criminality is that the undue prejudice involved in acts which are crimes is another reason for excluding them.").

The Ninth Circuit has routinely upheld the exclusion of peace officers' prior instances of conduct (and alleged misconduct), finding such evidence inadmissible character evidence under Rule 404(b). <u>Gates v. Rivera</u> (9th Cir. 1993) 993 F2d 697, 700 (upholding the exclusion of evidence as to whether a police officer had shot anyone previously under 404(b) because "[t]he question to be resolved was whether, objectively, his use of force had been excessive. His past conduct did not bear on that issue."); <u>Cohn v. Papke</u> (9th Cir. 1981) 655 F2d 191, 193 (reversing jury verdict because of improper admission of character evidence and finding that the character evidence was not relevant even "in the most basic sense"); <u>Quintanilla v. City of Downey</u> (9th Cir. 1996) 84 F3d 353, 354-356 ( "In the instant case, plaintiff's strategy was to convince the jury to award him damages on the strength of evidence concerning [other] police [incidents] . . . [Plaintiff] argues that the district court abused its discretion when it excluded this body of evidence. He is incorrect. At issue during trial, was whether the individual officers' [actions] in this particular case was unconstitutional."); <u>Duran v. City of Maywood</u> (9th Cir. 2000) 221 F3d 1127, 1133. In <u>Segura v. City of Reno</u> (D. Nev. 1987) 116 FRD 42, 44, the court opined that prior instances of officer misconduct were inadmissible:

> This sort of 'past conduct' evidence is not admissible in federal courts, with very narrow exceptions. FED. R. EVID. 404(b). It further appears that the documents are not likely to lead to admissible evidence. The liability of the individual police officer arises out of this particular incident. Evidence of other similar incidents could only show a propensity for excessive use of force. This is the sort of 'conduct in conformity with character' evidence which § 404(b) prohibits.

Id. at 44.

Evidence of "other acts" is admissible under Rule 404(b) only if 4 conditions are satisfied: (1) there must be sufficient proof for the jury to find that the individual committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged. Bibo–Rodriguez (9th Cir. 1991) 922 F2d 1398, 1400; United States v. Miller (9th Cir. 1989) 874 F2d 1255, 1268. Even if these 4 conditions are satisfied, the evidence may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. Id.

In Duran v. City of Maywood, supra, in a lawsuit arising out of an officer-involved shooting, the Ninth Circuit upheld exclusion of the fact that the shooting officer was involved in another shooting only three days after the shooting at issue in the lawsuit, analyzing the four factors required under Rule 404 as follows:

> First, "the marginally probative value of this evidence is substantially outweighed by the danger of unfair prejudice." Second, in order to admit evidence of the other shooting, the court would have to have a "**full-blown trial within this trial**." The court noted that according to one of the Defendants' attorneys, an inquiry into the second incident would require "the testimony of eighteen to twenty-three witnesses, as well as no less than four experts." The court therefore concluded that "the marginal value of the evidence is 'substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by consideration of undue

delay, [and] waste of time.'"  Although we find the
similarity between the two shootings troubling, we do not
believe that the district court's decision to exclude the
evidence amounts to an abuse of discretion.

Id. at 1133 (emphasis added).

The exact analysis applied by the Ninth Circuit in <u>Duran</u> applies here.  The plaintiff cannot establish that any of the other lawsuits involve facts similar enough to the facts underlying this case, such that admission of evidence concerning the other incidents would be warranted.  Second, as discussed infra, none of the other alleged acts are relevant to prove any material issue in this case.  Third, as discussed below, any probative value this "other act" evidence may have is substantially outweighed by the prejudice to the defendants.

## C.   <u>Evidence Of Other Alleged "Wrongs" Is More Prejudicial Than Probative.</u>

Federal Rules of Evidence, Rule 403 authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403; <u>Old Chief v. United States</u> (1997) 519 US 172, 180.  In <u>Liew v. Official Receiver and Liquidator</u> (9th Cir. 1982) 685 F2d 1192, the Ninth Circuit held that trial courts have, "very broad discretion in applying Rule 403 and absent abuse, the exercise of its discretion will not be disturbed on appeal."

Citing to <u>Ballou v. Henri Studios</u> (5th Cir. 1981) 656 F2d 1147, the Advisory Committee note to Rule 403 noted that, "[u]nfair prejudice is that which could lead the jury to make an emotional or irrational decision, or to use the evidence in a manner not permitted by the rules of evidence . . . 'unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the

-56-

1  opposing party. Virtually all evidence is prejudicial or it isn't material . . . Unfair
2  prejudice within the context of Rule 403 means an undue tendency to suggest a
3  decision on an improper basis, commonly, though not necessarily, an emotional
4  one.'" FED. R. EVID. 403, Adv. Comm. Note, <u>citing</u>, <u>Ballou</u>, 656 F.2d 1147.
5  Indeed, the admission of evidence that is so inflammatory and irrelevant can, under
6  some circumstances, constitute reversible error. <u>Brandom v. United States</u> (7th
7  Cir. 1970) 431 F2d 1391, <u>cert. denied</u> 91 S.Ct. 586, <u>reh'g denied</u> 91 S.Ct. 949, <u>cert.</u>
8  <u>denied</u> 91 S.Ct. 950.

9       As discussed above, the evidence at issue in this motion lacks any probative
10  value to the sole issue remaining to be tried in this action and constitutes improper
11  character evidence. In contrast, the potential prejudicial effect of the introduction
12  of such evidence is very high. Critically, admitting the evidence would create the
13  potential of juror confusion, in that the jury may take into account these other
14  incidents when determining whether Wyatt's actions during this particular
15  investigation and use of deadly force were appropriate.

16       Even worse, admission of this evidence would unduly consume the Court's
17  time. In order for any prior or other incident to be relevant, the plaintiff would
18  have to establish that the other incident is factually similar and did, in fact, amount
19  to a civil rights violation or other misconduct. <u>Martinez v. City of Stockton</u> (E.D.
20  CA 1990) 132 FRD 677. This could potentially necessitate a "mini-trial" within
21  this trial for each of the other alleged "wrongs" and, on that basis alone, defendant
22  submits that exclusion is warranted. <u>Duran</u>, 221 F.3d at 1133 (upholding district
23  court's exclusion of evidence of prior shootings on ground that excessive
24  consumption of court time would create an undue prejudice).

25  **IV.   CONCLUSION**
26
27
28

1    Based upon the foregoing, defendant respectfully requests that the Court
2  issue an order precluding the plaintiffs from introducing the evidence, testimony
3  and/or argument set forth in this motion.

4  **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**
5  **NO. 1 TO EXCLUDE EVIDENCE OF OFFICER WYATT BEING NAMED**
   **IN OTHER CIVIL LAWSUITS**

6  **I.    Introduction**
7

8    Defendant mischaracterizes the evidence in this case.  Officer Wyatt reached
9  into the Mazda through the cracked passenger-side door, unlocked the passenger-
10 side door and got into the vehicle while Mr. Gonzales was seated inside.  He had
11 never seen Mr. Gonzales before, knew nothing about him, had no information that
12 Mr. Gonzales was armed and had no information that Mr. Gonzales had committed
13 any crime.  It is a fair presumption that had Officer Wyatt had any objective facts
14 to support a reasonable belief that Mr. Gonzales was armed and dangerous, Officer
15 Wyatt most likely would not have gotten inside of the vehicle with him.

16   There is no objective evidence to support Officer Wyatt's claim that Mr.
17 Gonzales' was speeding  down the street.  The speed limit was 25 miles per hour.
18 Both parties experts opine that the vehicle was travelling approximately 30 miles
19 per hour.  Officer Wyatt further testified that that he never felt any of the "dips" in
20 the intersection as the vehicle crossed through it and that the van never "bottomed
21 out". There is no evidence that the vehicle was "speeding."

22   There are further no objective facts to support Officer Wyatt's subjective
23 belief that Mr. Gonzales was going to "crash the minivan and kill or seriously
24 injure him."  Up until the time that Officer Wyatt entered the vehicle on his own
25 accord, Mr. Gonzales had neither threatened nor made any attempt to harm either
26 Officer Wyatt or his partner, Officer Ellis.  Officer Wyatt had no information about
27
28

Mr. Gonzales to support an objectively reasonable belief that Mr. Gonzales was violent. Mr. Gonzales was obeying the speed limit and there is no evidence that Mr. Gonzales was swerving in the street or making any attempts to crash the van. According to Officer Wyatt, only six seconds elapsed between the time that the van began moving and the time that Officer Wyatt shot Mr. Gonzales in the head.

Defendant seeks to exclude improper character evidence concerning Officer Wyatt, yet seeks to admit the same type of improper character evidence about Mr. Gonzales. Plaintiff's position is that all such improper evidence should be excluded and that otherwise, it would be inequitable for the court to admit character evidence as to the decedent and not as to Officer Wyatt.

## II.   Given that the Defense Seeks to Introduce Character and Propensity Evidence Concerning the Decedent, Plaintiff should be Entitled to Introduce Character and Propensity Evidence Concerning the Defendant.

As is addressed in plaintiff's motions in limine, defendant seeks to introduce a myriad of character and propensity evidence about Mr. Gonzales. Although Officer Wyatt had none of this information at the time of the shooting, defendant would have the jury hear evidence that Mr. Gonzales was a member of a gang when he was a juvenile and while he was incarcerated, that Mr. Gonzales had a criminal history, that Mr. Gonzales had an outstanding warrant for his arrest, that Mr. Gonzales had gang tattoos and that toxicology results revealed the presence of alcohol and methamphetamine in Mr. Gonzales' system at autopsy. Since Officer Wyatt knew none of this, this evidence bears no relevance to the reasonableness of Officer Wyatt's use of deadly force, which is a determination confined to the objective circumstances known to Officer Wyatt at the time of the use of force.

However, defendant's purpose in admitting this evidence is to argue that Mr. Gonzales was a bad person, that he was likely to be hostile to Officer Wyatt during this incident because he was hostile to law enforcement on prior occasions, that he had violent tendencies and therefore was likely to be violent toward Officer Wyatt during this incident and that Mr. Gonzales' nature, in general, was criminal. Although purely speculative, defendant wishes that the jury will rely on this evidence of prior conduct to infer that Mr. Gonzales intended to harm Officer Wyatt during this incident and that the jury will find that Officer Wyatt acted reasonably on this improper basis.

Plaintiff does not intend to introduce evidence of Officer Wyatt's prior lawsuits or complaints. However, if defense counsel opens the door by painting Officer Wyatt as a stellar officer with a clean reputation and against whom no complaint or lawsuit has ever been filed, then plaintiff is entitled to rebut that evidence. Moreover, if the court admits the improper evidence referenced above concerning the decedent, as a corollary and in the interests of equity, plaintiff should be able to introduce the same type of character evidence concerning Officer Wyatt. The jury should be entitled to hear that Officer Wyatt has had prior complaints against him, that he has been sued previously for his conduct as a law enforcement officer, and that he is currently a defendant in a civil rights case alleging that he threatened and intimidated a suspect into falsely confessing to a murder charge. The type of conduct alleged in the complaints against Officer Wyatt goes directly to Officer Wyatt's veracity, which is a material issue in a case where Officer Wyatt shot and killed the only witness capable of contradicting Officer Wyatt's version of events. These prior lawsuits and complaints also go toward Officer Wyatt's intent to take the law into his own hands in response to his bias against members of the public who he deems have committed crimes.

## III.   Officer Wyatt's Employment and Training History is Relevant and Non-Prejudicial.

Plaintiff's counsel has never tried a police excessive force case where the court precluded the officer from testifying as to his employment and training experience as a peace officer.  In this case too, plaintiff should be able to examine Officer Wyatt as to the kind of training he received at the various agencies where he worked as a police officer prior to the shooting, including whether he has ever been trained to get into a car that is running during a traffic stop, what his training was with respect to the use of deadly force, and whether he received any training concerning the use of less than lethal options, such as the taser, pepper spray, and the baton.  Officer Wyatt's experience as a police officer is also relevant to show whether he had ever entered a running vehicle during a traffic stop before, whether he had ever used deadly force before, and whether he has experience using less than lethal options.   Whatever the prejudice is by the evidence that Officer Wyatt was employed by multiple law enforcement agencies and as a private investigator, it is far outweighed by the relevance to his background, training, and experience.

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF GORY/BLOODY PHOTOS

## I.   INTRODUCTION

The defendant anticipates that at the trial of this action, the plaintiff will seek to comment upon, refer to, or introduce evidence or testimony concerning Gory/Bloody Photographs of the decedent during autopsy or at the hospital.

Because this type of evidence is more prejudicial than probative, lacks relevance, constitutes nothing more than inadmissible character evidence, and the probative value of such evidence is substantially outweighed by the risk that its

1   presentation would waste time, confuse the issues, and mislead the jury, the

2   defendant requests that all such evidence be excluded at trial.

3   **II.   ARGUMENT**

4       **A.   Gory/Bloody Photographs**

5        Federal Rules of Evidence, Rule 403 authorizes the exclusion of relevant

6   evidence when its "probative value is substantially outweighed by a danger of one

7   or more of the following: unfair prejudice, confusing the issues, misleading the

8   jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

9   FED. R. EVID. 403. Photographs, in particular, can be unfairly prejudicial if they

10  are "sufficiently shocking or repulsive" enough to necessarily elicit an emotional

11  response from the jury. U.S. v. Souffront (7th Cir. 2003) 338 F3d 809, 825.

12       In Spears v. Mullin (10th Cir. 2003) 343 F3d 1215, 1226 (10th Cir. 2003),

13  the court stated: "Although there are no clearly defined legal elements, the

14  fundamental-fairness inquiry requires us to look at the effect of the admission of

15  the photographs within the context of the entire second stage.... We consider the

16  relevance of the photographs and the strength of the aggravating evidence against

17  Spears and Powell as compared to the mitigating evidence in their favor and decide

18  whether admission of the photographs could have given the State an unfair

19  advantage. Ultimately, we consider whether the jury could judge the evidence

20  fairly in light of the admission of the photographs." Id. at 1226.

21

22       Here, gruesome photographs should not be admissible where the probative

23  value of photographs of the body of Anthony Gonzales is vastly outweighed by

24  their prejudicial effect. In this case, Defendant maintains that the sole reason the

25  Plaintiff would offer these photographs into evidence would be to inflame the

26  passions of the jury. As such, this Court is respectfully requested to exclude such

27  evidence as it is unduly prejudicial under the circumstances.

28

## III.   CONCLUSION

Based upon the foregoing, defendant respectfully requests that the Court issue an order precluding the plaintiffs from introducing the evidence, testimony and/or argument set forth in this motion.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF BLOODY/GORY PHOTOS

## I.   ARGUMENT

### A.   Photos of the Decedent after he was Shot are Necessary to Support Plaintiff's Claim for Survival Damages.

During discovery, Plaintiff received 70 autopsy photos, 13 post-embalming photos, 15 photos of Mr. Gonzales after his injuries were attended to at the hospital and nine photos of Mr. Gonzales that truly depict the extent and scope of Mr. Gonzales' injuries. Mr. Gonzales' family made the difficult decision to donate his vital organs, and therefore many of the photographs that plaintiff obtained during discovery depict Mr. Gonzales after organ donation with large scale incisions sewn together. Plaintiff acknowledges that these images will be sensitive to some jurors and to Mr. Gonzales' family.

Nevertheless, plaintiff's claims, as successor in interest to Mr. Gonzales and on his behalf, includes a claim for Mr. Gonzales' pain and suffering as a part of his request for survival damages. And, plaintiff must therefore present some evidence to the jury to underscore the nature and severity of Mr. Gonzales' injuries, his condition after the shooting, and his suffering prior to his death.

Plaintiff has already agreed to limit the photographs they intend to admit. Of the 83 autopsy and post-embalming photos, plaintiff seeks to admit only four. None of the autopsy photos that plaintiff seeks to admit show any part of Mr. Gonzales' body other than the area of his injury, they do not depict Mr. Gonzales naked, they do not depict the large suture tracks to Mr. Gonzales after his organs

were donated, they do not depict any blood and there is only one photo of Mr. Gonzales' face (in which his eyes are closed). One photo depicts the entrance wound, one photo depicts the exit wound, and two photos depict the trajectory rod placed during autopsy, each from different angles and views. None of these photos are duplicative of one another. Defendants have agreed to all but one of these photos and will not agree to the photograph depicting the front view of Mr. Gonzales' head and trajectory rod. *See* Exhibit A to Declaration of Melanie T. Partow in Opposition to Defendant's Motions in Limine.

Of the 15 photos of Mr. Gonzales in the hospital after his injuries were attended to, plaintiff seeks to admit only two. None of these photos depict any unnecessary blood or gore, but they do show the severity of Mr. Gonzales' state after he was admitted to the hospital and stabilized. Again, these two photos are necessary to support plaintiff's survival claim. Defendants have agreed to these two photos. *See* Exhibit B to Declaration of Melanie T. Partow in Opposition to Defendants' Motions in Limine.

Finally, of the nine photos of Mr. Gonzales that depict his condition upon arrival to the hospital and the scope and severity of his condition following the gunshot wound, plaintiff seeks to introduce only one.[1] Of these nine photos, this photo would be the only photo depicting any blood or gore, but it is necessary in order to illustrate the scope and extent of Mr. Gonzales' injuries and his pain and suffering. Records from the University of California Irvine Medical Center indicate that Mr. Gonzales was pronounced brain dead at 7:30 pm on the date of the incident. The digital time stamp on each of the four photos of Mr. Gonzales

---

[1] Plaintiff presented four of these nine photos to the defense, and proposed that the parties agree to one photo. Plaintiff further proposed that the defense could pick which singular photo plaintiff would use during trial. Defendants would not agree. The four photos from which plaintiff would pick one photo to use during trial are attached as Exhibit C to the Declaration of Melanie T. Partow.

(from which Plaintiff would pick only one) indicate that these photos were taken between 3:00pm and 3:30pm on the date of the incident – before Mr. Gonzales' was pronounced brain dead - and are therefore accurate and real-time depictions relevant to prove Mr. Gonzales' pain and suffering for his survival claim. Plaintiff's ability to prove pain and suffering as a part of Mr. Gonzales' survival claim would be severely prejudiced were plaintiff precluded from introducing at least one photo showing the scope and extent of Mr. Gonzales' injuries.

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 3 TO LIMIT THE TESTIMONY AT THE TIME OF TRIAL OF PLAINTIFF'S EXPERT, ROGER CLARK**

## I.      ARGUMENT

The Ninth Circuit held en banc:  "The district court's grant of summary judgment as to the Fourteenth Amendment claim and the non-deadly force portion of the Fourth Amendment claim is affirmed."  Gonzalez v. City of Anaheim, 747 F.3d 789, 798 (9th Cir.) cert. denied sub nom. Wyatt v. F.E.V., 135 S. Ct. 676, 190 L. Ed. 2d 389 (2014)  Further, *Penal Code Section 834(a)* states that the person being arrested must submit to an arrest.

Roger Clark testified if unreasonable force was used to effect the arrest, decedent may lawfully resist and/or flee to overcome that force citing Penal Code Sections 692, 693, and 694.

As the Ninth Circuit has already affirmed en banc Defendant's motion for summary judgment to all 4th amendment claims except deadly force, Defendant moves to exclude any testimony from Mr. Roger Clark that either officers' actions (prior to the use of deadly force) gave decedent 1) a right to resist and/or 2) a right to flee or that 3) either officer used excessive force.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 3 TO LIMIT THE TESTIMONY AT THE TIME OF TRIAL OF PLAINTIFF'S EXPERT, ROGER CLARK**

I.    **ARGUMENT**

    A.    **The Fourth Amendment's Reasonableness Analysis asks the Jury to Consider the Totality of the Circumstances and the Availability of Less than Lethal Alternatives; Roger Clark's Consideration of Officer Wyatt's Pre-Shooting Conduct in Opining as to the Reasonableness of the Shooting is Proper and Consistent with the Ninth Circuit's Ruling.**

Mr. Clark will not offer an opinion regarding whether or not Mr. Gonzales had a right to resist or flee the pre-shooting force used against him by Officers Wyatt and Ellis. Mr. Clark will also not offer an opinion regarding whether the pre-shooting use of force by either officer was reasonable. However, this is subject to the caveat that neither counsel for either party opens the door and solicits such an opinion from Mr. Clark. If defense counsel plans to ask Mr. Clark at trial questions such as, "isn't it true that the pre-shooting force was reasonable?" and "isn't it true that Mr. Gonzales had a duty to submit to the officers?", Mr. Clark would be obligated to testify truthfully as to his opinions in response to such questions.

Moreover, Mr. Clark reviewed and considered the totality of the circumstances when considering whether Officer Wyatt's use of deadly force was excessive and unreasonable, including Officer Wyatt's decision to enter a vehicle whose engine was running, Officer Wyatt's failure to give a warning before he fired and Officer Wyatt's failure to employ less than lethal alternatives to subdue Mr. Gonzales once the car started moving. Mr. Clark's opinion also reflects on the reasonableness of Officer Wyatt's perception that Mr. Gonzales posed an imminent

threat of death or serious bodily injury, and Mr. Clark will opine that when assessing the threat, it was unreasonable for Officer Wyatt <u>not</u> to consider that Mr. Gonzales was fleeing in response to the force that was being used against him. Officer Wyatt testified that the car was put in drive while both officers were using considerable force against Mr. Gonzales, including flashlight blows, blows to the head and a potential carotid restraint. These facts are part of the totality of the circumstances to which Officer Wyatt was responding and Mr. Clark's opinion of the reasonableness of Officer Wyatt's response to those circumstances is neither improper nor conflicts with the Ninth Circuit's ruling. Mr. Clark will also opine that the shooting in this case was excessive and unreasonable and that once Officer Wyatt drew his gun, it was permissible for Mr. Gonzales to, in self- defense, attempt to push the gun away. Mr. Clark can offer these opinions without opining as to whether the pre-shooting force was excessive and without contravening the Ninth Circuit's opinion.

Respectfully submitted,

Dated: April 17, 2015            LAW OFFICES OF DALE K. GALIPO

/s/ Melanie T. Partow

_____
Dale K. Galipo
Melanie T. Partow
Attorneys for Plaintiff

Dated: April 17, 2015            MICHAEL R.W. HOUSTON, CITY ATTORNEY

By: _____
/s/ Moses W. Johnson, IV
Moses W. Johnson, IV
Assistant City Attorney
Attorneys for Defendant
DARON WYATT

109083